## MAJELLA W. SCHWARZ *v.* ALAN L. SCHWARZ
## (AC 31337)

Beach, Flynn and Schaller, Js.

---

Argued April 5—officially released October 12, 2010

*Arnold M. Potash*, for the appellant (defendant).

*Martha Anne Wieler*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Alan L. Schwarz, appeals from the judgment of the trial court granting both his motion and the motion filed by the plaintiff, Majella W. Schwarz, for modification of alimony and increasing his alimony obligation from $2000 per week to $2175

per week. The defendant claims that the court improperly (1) found a substantial change in his financial circumstances and (2) increased the plaintiff's award of alimony after finding that he had met his burden with regard to his motion to modify alimony on the basis of the change in the plaintiff's financial circumstances caused by her living with another person.[1] We disagree, and, accordingly, affirm the judgment of the trial court.

The record reveals the following facts. The parties' twenty-nine year marriage was dissolved on February 23, 2005. At the time of dissolution, the parties filed a separation agreement, which was incorporated by reference into the dissolution decree. Paragraph three of the agreement provided that the defendant shall pay alimony to the plaintiff in the amount of $2000 per week until the death of either party or the plaintiff's remarriage. It also specifically stated that "[a]limony shall be subject to section 46b-86 (b) of the Connecticut General Statutes."

This case arose from the defendant's postjudgment motion to modify alimony dated September 24, 2008, and filed October 23, 2008. In his motion, he requested that alimony be modified or terminated because of a substantial change in the financial circumstances of the plaintiff in that she was residing with another individual. The plaintiff subsequently filed her own motion to modify dated April 1, 2009. Her motion requested an increase in alimony because of a substantial change in the financial circumstances of both parties. The plaintiff claimed that the defendant's financial circumstances substantially had improved as a result of an increase in his income and his remarriage and that her financial circumstances had deteriorated as a result of a substantial increase in the cost of premiums for her health insurance coverage, which she was unable to pay. The court

---

[1] At oral argument, the defendant withdrew his claim that the court erred in ordering retroactive payments of increased amounts of alimony.

conducted a hearing on the motions on April 7, 2009. On July 15, 2009, the court filed its memorandum of decision granting both parties' motions for modification of alimony and ordering the defendant to pay alimony in the amount of $2175 per week. Additional facts will be set forth as necessary.

I

The defendant claims that the court erred when it found that the increase in his income constituted a substantial change in circumstances warranting a modification of his alimony obligation. We disagree.

The following additional facts found by the trial court are necessary for our resolution of the defendant's claim. In 2005, at the time of the dissolution of the parties' marriage, the defendant had a gross income of $373,620 per year and a net income, excluding his deduction for retirement, of $265,980 per year. At the time of the hearing on the motions for modification, the defendant had a gross income of $450,000 per year and a net income, excluding his deduction for retirement, of $301,756 per year. The court noted that because the defendant did not comply with the subpoena served on him by the plaintiff, the only information available to the court regarding the defendant's income was derived from his financial affidavit, which may not have been accurate. Since the time of the dissolution of the marriage, the defendant had remarried, and his new wife had a gross income of approximately $150,000 per year. The court found that the increase in the defendant's financial circumstances as well as the decrease in his expenses, as he was sharing living expenses with his new wife, constituted a substantial change in circumstances.

The plaintiff also claimed that there was a substantial change in circumstances due to a substantial increase in the cost of her health insurance coverage. The parties'

separation agreement contemplated the plaintiff's need for health insurance and, accordingly, provided that the defendant would pay for the plaintiff's COBRA[2] coverage for three years. When the defendant stopped paying for the plaintiff's COBRA coverage in 2008, the plaintiff procured insurance coverage by working at the golf pro shop for the man with whom she was living. The plaintiff's cohabiting partner testified that due to circumstances beyond his control, the golf pro shop could no longer pay for the plaintiff's health insurance. As a result, the plaintiff anticipated paying approximately $15,000 per year for her health insurance.

As a preliminary matter, we set forth our standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Cleary* v. *Cleary*, 103 Conn. App. 798, 800, 930 A.2d 811 (2007).

"Trial courts have broad discretion in deciding motions for modification. . . . Modification of alimony, after the date of a dissolution judgment, is governed by General Statutes § 46b-86. . . . When . . . the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances. . . . The

[2] See the Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161–68.

change may be in the circumstances of either party. . . . The date of the most recent prior proceeding in which an alimony order was entered is the appropriate date to use in determining whether a significant change in circumstances warrants a modification of an alimony award. . . .

"In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. . . . More specifically, these criteria, outlined in General Statutes § 46b-82, require the court to consider the needs and financial resources of each of the parties . . . as well as such factors as the causes for the dissolution of the marriage and the age, health, station, occupation, employability and amount and sources of income of the parties." (Citations omitted; internal quotation marks omitted.) *Crowley* v. *Crowley*, 46 Conn. App. 87, 91–92, 699 A.2d 1029 (1997).

The defendant argues that the court erroneously found that his increase in income constituted a substantial change in circumstances because the increase in his net income was less than 15 percent. He bases this argument on § 46b-86 (a), which provides in relevant part that "any deviation of less than fifteen per cent from the child support guidelines is not substantial . . . ." The defendant's reliance on § 46b-86 (a), however, is misplaced. The reference to a substantial deviation does not refer to a change in income of a party but, rather, refers to a final order of the court for child support that deviates from the child support guidelines. We are not persuaded that this statutory language should be applied mechanistically in the context of a modification of alimony to prohibit a trial court from ever determining that an increase of less than 15 percent can be a substantial change in circumstances.

The defendant also argues that the court erred when it specifically held that the plaintiff's need for health

insurance did not constitute a basis for a finding of a substantial change in circumstances in the factual context of this case but then later considered the need for health insurance when making adjustments in alimony. The defendant incorrectly interprets the court's decision. The court held that it would not consider the plaintiff's current need for health insurance as a substantial change in circumstances because the parties contemplated the plaintiff's need for health insurance when they agreed that the defendant would pay her COBRA expenses for three years. This finding, however, did not preclude the court from considering the plaintiff's need for health insurance as part of her current financial circumstances *after* determining that a substantial change in circumstances existed on the basis of other factors. Indeed, once the court determines that a substantial change in circumstances exists, it must consider all of the factors in § 46b-82 to order alimony in accordance with the needs and financial resources of each of the parties. See *Borkowski* v. *Borkowski*, 228 Conn. 729, 737, 638 A.2d 1060 (1994) ("[o]nce a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony . . . are relevant to the question of modification" [internal quotation marks omitted]).

Here, the court found that the defendant's gross income had increased from $373,620 to $450,000 per year and that his net income had increased from $265,980 to $301,756 per year . These figures represented an increase in his gross income of 20 percent and an increase in his net income of over 13 percent. "[T]he increase need not be termed 'dramatic' or 'startling' so long as it is found to be a substantial change in circumstances." *Crowley* v. *Crowley*, supra, 46 Conn. App. 95 n.9. This finding alone is a sufficient basis for a finding of a substantial change in circumstances. We

conclude that the court applied the correct legal standard and did not abuse its discretion in determining that a substantial change in circumstances had occurred. See *Serby* v. *Serby*, 4 Conn. App. 398, 401, 494 A.2d 617 (1985) (holding that 20 percent increase in gross income was "dramatic").

## II

The defendant next claims that the court improperly increased the plaintiff's award of alimony after concluding that he had met his burden with regard to his motion to modify alimony based on the change in the plaintiff's financial situation caused by her living with another person. The defendant appears to claim that a court, as a matter of law, cannot increase the amount of alimony after finding that the party receiving alimony was living with another person, as contemplated in § 46b-86 (b). The defendant appears additionally to claim that even if the court had the statutory authority to increase alimony in these circumstances, it abused its discretion in this case. We disagree.

The court summarized its factual findings regarding the plaintiff's living arrangements as follows. "Prior to the dissolution on February 23, 2005, the plaintiff had moved out of the marital residence and had purchased a three bedroom house located at 142 Colin Hill Drive, Meriden. Some time in 2006, the plaintiff began residing with Arthur 'Tex' Kane on a permanent basis. In addition to living together at the Meriden residence, they lived from January through March at the plaintiff's home in Port St. Lucie, Florida.[3] A judicial pretrial was conducted in January, and, shortly thereafter, Kane moved out of the Meriden home but traveled with the plaintiff to the Florida home. The plaintiff testified that once in Florida, Kane 'stayed with a friend' and did not stay in

[3] The Port St. Lucie home was also purchased in 2005, after the dissolution of the parties' marriges.

the Florida home. Throughout their cohabitation, the plaintiff paid for the expenses of both homes. She paid the utilities, taxes, telephone, heat, etc., and Kane paid for expenses 'outside of the home,' dinners, entertainment, etc. She testified that she never asked him to contribute to any of the household expenses and that she did not want him to contribute, as the bills were in her name and [were] her responsibility. She stated that she did not want to be dependent on anyone for money, and if Kane gave her money, it might increase her income and she could possibly live beyond her means. This was her 'conscious decision' not to accept any money from Kane. She does not accept the fact that she is dependent on someone else for money—her [former spouse].

"The plaintiff is a registered nurse, and has an additional certification as an [advanced practice registered nurse]. She stopped working as a nurse practitioner in June, 2002, and does sporadic work for the Wallingford board of education. Her income from that job has not varied much since the date of dissolution, as her financial affidavit filed on February 23, 2005, and the financial affidavit filed on April 7, 2009, indicate essentially the same gross and net income from the board of education. She has several chronic and serious health issues. She suffered from ulcerative colitis when she was in her twenties, and after the birth of her third son, had a total colectomy. She also has a spinal condition, causing her difficulty in doing routine chores, such as getting dressed. Her most serious condition, however, is leukemia, which was diagnosed in May, 2003, prior to the dissolution. Currently she is treating it with a chemotherapy drug [that] she takes on a daily basis. The side effects of nausea and diarrhea are particularly grueling, given the fact she is without a colon. Although the leukemia is in a chronic stage at the present time, it could progress into an acute situation, which would

make it difficult to control, and may be fatal. The [separation] agreement provided that the plaintiff would receive COBRA benefits for her medical insurance and [that] the defendant would pay for those benefits for three years. When the benefits expired, the plaintiff began to work at Kane's golf shop as a bookkeeper, so that she would be able to obtain insurance, under an arrangement that the plaintiff would do the books, record keeping, etc., and Kane would pay for her health insurance, which was approximately $600 to $700 per month. That insurance expired in May, 2009, due to a change beyond Kane's control, and her new coverage will cost approximately $15,000 per year, or approximately $300 per week.

"Kane is a golf pro at a golf course in Meriden and has been the head pro for the last five years. The defendant issued a subpoena for certain records, and tax returns, but Kane did not comply. His gross income from all sources of his employment is approximately $200,000— 'maybe a little more.' He is paid by the town, leases golf carts, gives golf lessons, sells equipment and receives some of his income by way of cash. In addition, while he is in Florida with the plaintiff, he also does some teaching of golf. His 2007 tax return indicates business income of $8858 and gambling winnings of $108,638. He acknowledged that he began living with the plaintiff on a full-time basis in the spring of 2006, both while in Connecticut and in Florida. He testified that he does not pay her anything by way of rent but pays for their evenings out, and that amounts to approximately five nights out a week, spending approximately $30 to $60 per night, all with cash. He has no recollection of any conversations with the plaintiff about payment of rent or any other living expenses. Currently, he is living in a hotel while an apartment he intends to rent is being renovated. It was his idea that [the plaintiff] work for him, handling his books, and he would pay

for her health insurance but would pay no salary. Since he can no longer offer her health insurance, he will pay her $15 per hour for the work she does for him, which amounts to approximately $180 per month, substantially less than payments he was making on her behalf for the health insurance. Kane testified that he moved out because it was causing [the plaintiff] undue stress due to the defendant's filing of the motion for modification. He did provide her a great deal of assistance while living with her, helping with her medical conditions and issues. It is uncontroverted that but for the defendant's filing of the motion for modification, Kane and the plaintiff would still be living together."

The defendant argues that the court erred when it found that he had met his burden of proof under § 46b-86 (b) but then failed to reduce his alimony payments accordingly. He contends that once a party has met its burden with respect to § 46b-86 (b), the court must then reduce the alimony payments and may not increase those payments. Because the defendant's claim raises a question of statutory interpretation, "our review is plenary. . . . A fundamental [tenet] of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body. . . . Our legislature . . . enacted General Statutes § 1-2z, which provides that [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Gervais* v. *Gervais*, 91 Conn. App. 840, 849–50, 882 A.2d 731, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005).

We further note that "[i]t is an accepted principle of statutory construction that, if possible, the component

parts of a statute should be construed harmoniously in order to render an overall reasonable interpretation. . . . It also is well established that we are required to read statutes together when they relate to the same subject matter . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result." (Internal quotation marks omitted.) Id., 855.

Section 46b-86 (b) provides: "In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the Superior Court *may*, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party." (Emphasis added.)

The court found, and the parties do not dispute, that for purposes of § 46b-86 (b) the plaintiff was living with Kane. The court also found that the plaintiff's financial circumstances had changed as a result of her living arrangement with Kane.[4] The issue in this case is

---

[4] The defendant also argues that the court made no determination as to what extent the plaintiff's needs had been altered, as required by § 46b-86 (b). See *Blum* v. *Blum*, 109 Conn. App. 316, 323–24, 951 A.2d 587 ("court must have the ability to compare the [plaintiff's] financial needs at different points in time in order to determine whether those needs either have increased or have decreased over time"), cert. denied, 289 Conn. 929, 958 A.2d 157 (2008). We disagree. The court found that at the time of dissolution, the plaintiff's needs, based on her weekly living expenses as indicated on

whether the court may, in its discretion, increase the plaintiff's alimony on the basis of her motion to increase alimony in accordance with § 46b-86 (a)[5] despite the defendant's motion to reduce or to terminate alimony based on § 46b-86 (b). We conclude that in the circumstances of this case, the court did not abuse its discretion in increasing the plaintiff's alimony after finding that the defendant had met his burden under § 46b-86 (b), because it also found that the plaintiff had met her burden with regard to § 46b-86 (a).

We previously have held that once a party has met his or her burden under either § 46b-86 (a) or (b), the court then should apply the factors of § 46b-82 to fashion a new alimony award. See *Gervais* v. *Gervais*, supra, 91 Conn. App. 854–55 ("[o]nce [a change in circumstances has been proven under either § 46b-86 (a) or § 46b-86 (b)] a uniform application of the § 46b-82 factors is warranted and should be applied to a request

her financial affidavit, were approximately $1568 per a week. Her current financial affidavit showed an increase in her weekly expenses to $2400. Although the evidence at trial showed that Kane's financial contributions to the household were $250 per week, the court determined that because the plaintiff had not incurred any substantial debt, it "can only conclude that these expenses [beyond her income were] somehow being defrayed directly or indirectly by Kane." The court also found that the plaintiff had an added expense of health insurance premiums, which was not being met by her relationship with Kane.

Accordingly, the court found that the plaintiff had increased financial needs that were not being met by her cohabitation, and, thus, the court increased her alimony. The court noted that it would not find a substantial change in circumstances based on the plaintiff's current need to pay health insurance premiums because the parties' separation agreement contemplated that at some point the defendant would no longer be responsible for paying the plaintiff's health insurance premiums. The court, however, was able to consider the plaintiff's need to pay her health insurance premiums as part of her overall financial circumstances once a substantial change in financial circumstances had been proven on other grounds.

[5] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification . . . any final order for the periodic payment of permanent alimony . . . may at any time thereafter be continued, set aside, altered or modified by [the] court upon a showing of a substantial change in the circumstances of either party . . . ."

for a postdissolution modification of alimony whether brought under either subsection"). "The trial court is limited to reviewing the current [financial] situation of the parties in light of the statutory criteria set forth in § 46b-82." *Crowley* v. *Crowley*, supra, 46 Conn. App. 91. In light of the court's decision that both of the parties' motions should be granted, it therefore was free to fashion an alimony award under either § 46b-86 (a) or (b). Section 46b-86 (b) does not require a court to reduce alimony if a party proves that the other party's financial circumstances have changed as a result of his or her choice to live with another person. In addition, there is no language in § 46b-86 (b) to preclude the party who is receiving alimony from pursuing a motion to increase alimony.

Having determined that the court was permitted in these circumstances to increase the plaintiff's alimony, we now turn to the defendant's claim that the court abused its discretion by increasing the alimony under these facts. "Trial courts are vested with broad and liberal discretion in fashioning orders concerning the type, duration and amount of alimony and support, applying in each case the guidelines of the General Statutes. If the court considers the relevant statutory criteria when making its alimony and support award, the award may not be disturbed unless the court has abused its discretion." *Hartney* v. *Hartney*, 83 Conn. App. 553, 559, 850 A.2d 1098, cert. denied, 271 Conn. 920, 859 A.2d 578 (2004).

The court concluded that its finding that the parties' financial circumstances significantly had changed pursuant to § 46b-86 (a) warranted an increase in alimony. It first found that the financial needs of the plaintiff had increased but that the increase in her financial needs was being met mostly by Kane. It also found that she now needed to pay for health insurance. The court subsequently found that, as the defendant's income had

increased, it was equitable for him to pay a portion of the plaintiff's increased need. The court also took into account the fact that the plaintiff's needs were not as high as she had claimed, because of her living arrangements with Kane, but that despite Kane's contributions to her financial circumstances, she still was in need of additional alimony. Accordingly, the court increased the plaintiff's alimony award on the basis of these findings. In light of its findings, we conclude that the court applied the law correctly and did not abuse its discretion in increasing the plaintiff's alimony by $175 per week.

The judgment is affirmed.

In this opinion SCHALLER, J., concurred.

FLYNN, J., dissenting. The majority holds that where a trial court grants a party's motion to terminate or to reduce alimony such that, at a minimum, alimony must accordingly be terminated or reduced, the court may simultaneously grant an opposing motion to increase alimony. Because I believe that these actions are inherently inconsistent and, further, would vitiate the purpose of General Statutes § 46b-86 (b), I cannot agree with the majority. Therefore, I respectfully dissent.

If a party remarries after divorce, the remarriage terminates the alimony such a party receives. Human nature being what it is, some parties who had been divorced entered cohabiting relationships rather than remarrying, to avoid termination of alimony received from a former spouse. To avoid such arrangements which took unjust advantage of a former spouse, the legislature enacted a reform in adopting § 46b-86 (b). Subsection (b) "is a separate and independent statutory basis for the modification of alimony . . . ." (Internal quotation marks omitted.) *Taylor* v. *Taylor*, 17 Conn.

App. 291, 292–93, 551 A.2d 1285 (1989). It is a distinct statutory basis for such modifications from § 46b-86 (a), which authorizes modifications for other reasons. "Section 46b-86 (b) was enacted to correct the injustice of making a party pay alimony when his or her ex-spouse is living with a person of the opposite sex, without marrying, to prevent the loss of support." (Internal quotation marks omitted.) *Duhl* v. *Duhl*, 7 Conn. App. 92, 94, 507 A.2d 523, cert. denied, 200 Conn. 803, 509 A.2d 517 (1986), quoting *Connolly* v. *Connolly*, 191 Conn. 468, 473–74, 464 A.2d 837 (1983). It consists of two prongs. First, the divorced party receiving the alimony must have commenced living with another person, and, second, the former spouse's financial needs have been altered and decreased because of the cohabitation.

The plaintiff and Kane admitted cohabiting with one another and the court so found. The court found that they had ceased living together only because the defendant had filed a motion to terminate or to reduce alimony. In addition, the court found that the way the plaintiff and Kane had "orchestrated" their financial lives satisfied the second prong of § 46b-86 (b). So, the defendant's motion to terminate or to modify alimony under § 46b-86 (b) was well within the court's discretion and properly was granted. Although the court did not specify whether it was terminating or ordering a reduction of alimony, these were the court's only two alternatives when it granted the defendant's motion. This appeal is before us because after the defendant filed a § 46b-86 (b) motion because the plaintiff was living with another man and her financial needs had been altered, the plaintiff filed a § 46b-86 (a) motion to increase her alimony because the defendant's income had increased. The court, after having granted the defendant's subsec-

tion (b) motion, nonetheless granted the plaintiff's motion to increase alimony based on this increase in the defendant's income.[1]

This last action is inconsistent with the first. If a divorced former spouse is found to be living with another person and her needs are altered and diminished, but said former spouse can avoid a diminution or decrease in alimony simply by the expedient of making a motion to increase alimony because the former spouse is making more money than at the time of the dissolution, then the legislature's attempt in enacting § 46b-86 (b) to remedy the unjust taking advantage of a former spouse, would be of no force or effect. I therefore would conclude that the increase in alimony ordered pursuant to § 46b-86 (a) was an abuse of discretion under the facts that the court found and would reverse that judgment. The defendant ex-husband has suffered an injustice where, in order to avoid alimony termination, the plaintiff entered a relationship with another person without benefit of marriage, and then, after termination or modification should have occurred, he suffered an increase in alimony because his income had increased.

---

[1] In ruling on the plaintiff's motion, the court noted that it did not consider the plaintiff's increased health insurance costs in determining whether there had been a substantial change in financial circumstances because the parties had contemplated the plaintiff's medical needs in forming their separation agreement under which the defendant paid the plaintiff's COBRA costs for three years. The plaintiff's diagnosis of leukemia was known at the time of the dissolution.