******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LUCILLE NAPPO *v.* WILLIAM NAPPO
(AC 40613)

Lavine, Keller and Bishop, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court granting in part the plaintiff's amended motion for contempt, modifying his alimony obligation and issuing certain sanctions and remedial orders. Pursuant to the dissolution judgment, which was rendered in 2004, the defendant was ordered to pay the plaintiff as alimony one half of his monthly benefit from his M Co. pension and so much of his social security benefits as would equalize the parties' incomes, taking into account the social security benefits that the plaintiff receives. The alimony order also required the defendant to provide the plaintiff with copies of tax returns and certain forms, and ordered that the parties divide equally the proceeds of a $375,000 bond that the defendant had posted in conjunction with his starting his own business after he retired from M Co., and that the defendant seek the release of the bond from the bonding company and share the proceeds with the plaintiff. As of November, 2009, the defendant had not recovered the bond proceeds. Following various modifications of the alimony order, the plaintiff filed motions for contempt and for modification of alimony, which were later amended, claiming, respectively, that the defendant had failed to comply with a number of the court's orders and that there had been a substantial change of circumstances with respect to the parties' financial situations. Following a hearing on the plaintiff's motions, the trial court found with respect to the motion for contempt that, although the plaintiff had not proven that the defendant had wilfully violated the alimony order, the order, nevertheless, had been violated because the alimony payments were improperly reduced by certain bank wire transfer charges. The trial court also found that although the plaintiff had not proven that the defendant had wilfully violated the order directing the defendant to pay one half of the bond proceeds to the plaintiff, the order had not been complied with. The court did find the defendant in contempt of an order that required him to provide the plaintiff with notice related to the status of the bond, and for his failure to provide the plaintiff with copies of his tax returns and certain forms. The court issued certain remedial orders and ordered sanctions for the defendant's contempt and noncompliance with certain orders, and it granted the plaintiff's motion for modification of alimony. On the defendant's appeal to this court, *held*:

1. The trial court did not abuse its discretion in granting the plaintiff's amended motion for modification and increasing the defendant's alimony payments to $1300 per month, that court having properly factored into its calculation of the defendant's weekly income certain amounts advanced to him by his current wife and the expenditures she had paid on his behalf: although the defendant claimed that the court erroneously found an increase in his weekly net income by incorrectly assuming that his current wife's contributions to him constituted gifts rather than loans that he was obligated to pay, no promissory note or other documentary evidence was presented to support the defendant's contention that the payments were loans, and there was no evidence that any terms of repayment existed or that any repayment had ever been made or tendered during the entire course of the defendant's current marriage of approximately ten years, and the court correctly considered the current wife's financial contributions in calculating the defendant's weekly income because they were relevant to the defendant's expenses, a material factor in determining his net income and, therefore, his ability to pay the increased alimony; moreover, the defendant's claim that the modified alimony award of $1300, plus $1000 per month to be paid toward an arrearage, was excessive was unavailing, as the award nearly equalized the parties' incomes as was originally intended in the dissolution judgment, and contrary to the defendant's claim, the court's failure to take into account certain additional income that he claimed the

plaintiff allegedly derived from renting the parties' former marital home was not clearly erroneous in light of the evidence before the court, which showed that the property had been foreclosed and was no longer generating rental income.

2. The defendant could not prevail on his claim that the trial court improperly sanctioned him for his contempt of certain court orders and issued additional orders to remediate his failure to comply fully with certain other orders:

a. This court declined to review the defendant's claim that it was unfair for the trial court to award the plaintiff attorney's fees and travel expenses as a sanction for his being found in contempt, which was based on his claim that when the plaintiff failed to appear for a prior hearing, the court denied his motion for sanctions for expenses related to the cost of preparing for that hearing; the defendant brought his motion for sanctions to address the plaintiff's alleged failure to comply with certain discovery requests and to file a financial affidavit, not because of her failure to appear at the subject hearing, and his claim that he also had incurred travel expenses and attorney's fees in preparation for the hearing at which the plaintiff failed to appear was not adequately raised before the trial court and, therefore, was not properly preserved for appeal.

b. The trial court did not abuse its discretion in ordering the defendant to commence paying interest on the plaintiff's share of the bond proceeds if the bond was not released on or before October 31, 2017: although that court did not find the defendant in contempt for failing to comply with its order to obtain the release of the bond and to share the proceeds equally with the plaintiff, it expressed its concern that compliance was lacking and entered the remedial order to secure compliance in the near future, and it would defy common sense to conclude that merely because the defendant's violation of the order was not wilful, the court was deprived of its authority to enforce its order; moreover, the court reasonably determined that the defendant, in the exercise of due diligence, would be able to resolve the payment issue if given several additional months to obtain the release of the bond, and the defendant admitted in his appellate brief that the bonding company has been willing to release the bond proceeds since December, 2017.

c. The trial court did not abuse its discretion in ordering the defendant to reimburse the plaintiff $391.50 for the bank wire transfer charges, as the remedial order was proper even though the defendant's violation of the alimony order was not wilful because it compensated the plaintiff for a minor alimony deficiency.

Argued December 4, 2018—officially released March 19, 2019

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Gruendel, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Albis, J.*, granted in part the plaintiff's amended motion for contempt, granted the plaintiff's amended motion for modification of alimony and issued certain orders, and the defendant appealed to this court. *Affirmed*.

*William Nappo*, self-represented, the appellant (defendant).

*Opinion*

KELLER, J. The self-represented defendant, William Nappo, appeals from the judgment of the trial court granting postdissolution motions filed by the plaintiff, Lucille Nappo, for modification of alimony and for contempt.[1] The defendant claims that the court erred in (1) granting the plaintiff's motion for modification, thereby increasing his monthly alimony payments,[2] and (2) imposing certain sanctions and fashioning additional orders directed to the defendant upon finding him in contempt and/or not in compliance with several court orders. We affirm the judgment of the court.

The following facts and procedural history are relevant to this appeal. The parties' marriage endured for forty-seven years. After a contested trial, a judgment of dissolution was entered on May 6, 2004. Since the date of the judgment of dissolution, postjudgment proceedings have continued unabated.

At the time of the judgment, both of the parties were sixty-five years old with limited incomes. The dissolution court, however, noted that during the course of the marriage, the defendant had enjoyed significant business success and a lavish lifestyle and had provided generously for his four children without providing for the plaintiff's future. It concluded that it was "satisfied that [the defendant] can again make a good or even extraordinary income.[3] Although he is sixty-five, his health is good, his experience is broad, and his ability to understand, create, and manage business opportunities is brilliant." (Footnote added.) The alimony order provided in pertinent part: "The [defendant] shall pay the [plaintiff] as alimony [one] half of his monthly benefit from his Mobil [Corporation] pension immediately and so much of his social security benefit as will equalize the parties' income, taking into account the $149 per week that the [plaintiff] receives in social security. As additional alimony, the [defendant] shall pay the [plaintiff] $1 per year and the [plaintiff's] medical insurance premium until the death of either of them or the [plaintiff's] remarriage, which shall be nonmodifiable as to term. Each party shall notify the other of any changes in income or employment within two weeks of the same occurring. The [defendant] shall, by April 15th of each year, provide the [plaintiff] with all tax returns, including 1099s and K-1s, for himself, any corporation in which he holds an interest of more than [15] percent . . . and any partnership, sole proprietorship, or other entity in which he holds an interest or from which he derives any financial benefit whatsoever."[4]

On January 18, 2006, the alimony order was modified by agreement of the parties, and the defendant was required to pay alimony at the rate of $170 per week, payable in biweekly payments of $340. The alimony

order was modified again on February 20, 2007, which effectively reinstated the original alimony order contained in the judgment of dissolution. As the language of that judgment indicates, the calculation of the alimony payment due from the defendant to the plaintiff requires periodic recalculation as changes occur in the parties' respective monthly social security benefits. Although a later order was entered on January 13, 2012, it did not change the operable alimony order but required the parties to attend a status conference to discuss further payments due under the 2004 dissolution judgment. The status conference was held on February 9, 2012, and the parties reached an agreement about the proper computation of alimony due under the 2004 dissolution judgment as reinstated in the February 20, 2007 order. Under that agreement, the defendant began to pay monthly alimony in the amount of $609.15.[5]

The judgment of dissolution also ordered that the parties equally divide the proceeds of a bond in the amount of $375,000 that the defendant had posted in conjunction with starting his own business after he retired from Mobil Corporation. The defendant was ordered to seek "to be repaid for the bond and to divide the proceeds" with the plaintiff.

On June 15, 2015, the plaintiff filed a motion for contempt, which she amended on February 23, 2017 (amended motion for contempt), alleging that the defendant had failed: (1) to provide her with proof of tax returns and 1099, K-1, and W-2 forms as ordered by the court; (2) to pay her one half of the value of the bond, or to comply with a court order of November 16, 2009, relative to proof of his efforts to obtain release of the bond; (3) to pay alimony on a timely basis; (4) to provide verification of the amounts that the federal government was deducting from his income; (5) to disclose information concerning his American Express credit card on his financial affidavit as ordered by the court on December 9, 2015; and (6) to produce a copy of his passport, also ordered by the court on December 9, 2015.

On June 15, 2015, the plaintiff also filed a motion for modification of alimony, which she amended on February 23, 2017 (amended motion for modification), claiming a substantial change of circumstances based on the financial situations of the parties. On January 27, 2016, the plaintiff filed another motion for contempt (second motion for contempt), alleging that the defendant had failed to provide a true and accurate copy of his credit report as ordered by the court on January 15, 2016.[6] On February 3, 2016, the defendant filed a motion for attorney's fees for the defense of the plaintiff's pending motions. On February 5, 2016, the plaintiff filed a motion for attorney's fees incurred in pursuing her contempt motions and her motion for modification.[7]

On June 15, 2017, after three days of hearings, the

court rendered a decision on the February 23, 2017 amended motion for contempt and the January 27, 2016 second motion for contempt regarding the credit report, as well as the February 23, 2017 amended motion for modification of alimony. The court noted that during the course of the hearing, the plaintiff had determined that she was no longer pursuing certain claims she had alleged in her amended motion for contempt, and it issued the following findings and orders: "As to the plaintiff's claim that the defendant failed to make all alimony payments in a timely manner under the terms of the applicable order, the court finds that some payments were made late but that the defendant generally made the payments within a relatively short time after they were due. As to this ground, the court finds that the plaintiff has not proven by clear and convincing evidence that the defendant wilfully violated the court order, and it does not find the defendant in contempt. No remedial orders are entered with respect to this claim.

"With respect to the plaintiff's claim that her alimony payments were improperly reduced by bank wire charges, the court finds that the defendant made [twenty-five] monthly payments during the period between November, 2013, and February, 2016, by wire transfer. Each of those payments by the defendant via wire transfer was reduced by a wire transfer fee charged by the defendant's sending bank and by a further fee imposed by the plaintiff's receiving bank. As a result of these charges, the amount actually credited to the plaintiff's bank account for each of the months in question was less than the monthly alimony payment of $609.15 due under the applicable order.

"The payment of the alimony by wire transfer was not a requirement of the judgment but, rather, was agreed to by the parties informally. Nevertheless, the order required the defendant to pay $609.15 to the plaintiff. Even though the parties may have agreed to the wire transfer method, it was incumbent upon the defendant to pay his bank's wire transfer fee rather than have it deducted from the amount due to the plaintiff. The court finds that during the relevant period a total of $391.50 in wire transfer fees charged by the defendant's bank should have been paid by the defendant and not passed on to the plaintiff. However, the court concludes that the defendant is not responsible for the fees charged by the plaintiff's chosen banking institution to receive the funds which she agreed to have paid to her in that manner.

"As to this ground, the court finds that the plaintiff has not proven by clear and convincing evidence that the defendant wilfully violated the court order. However, the court finds that there was a violation of the order insofar as the defendant did not pay the full amount of alimony due from him, and the court enters

the remedial orders below to make the plaintiff whole and prevent the defendant's [wire] transfer charges from being passed on to her in the future."

As to the alleged failure of the defendant to transfer to the plaintiff one half of the $375,000 bond pursuant to the 2004 dissolution judgment, the court found that "[t]he bond funds had not yet been recovered by the defendant or paid to the plaintiff on November 16, 2009, when the court ordered the defendant to provide the plaintiff with a written report every six months thereafter on the status of the bond and his efforts to comply with the order to share the proceeds of it with her. . . .

"As to the first of [the plaintiff's] claims, the court finds that the defendant has not yet obtained the bond funds from the bonding company due to certain legal impediments that have arisen. The cash collateral for the bond in question is held by International Fidelity Insurance Company (bonding company). The bonding company was not required to release the funds which were posted to secure the issuance of the bond until the expiration of the statute of limitations on the liabilities which the bond was intended to protect against, a period which apparently expired on or about April 16, 2016. Since the passage of that date, the release of the funds has been further delayed due to a technical error in the statement, in a related bankruptcy proceeding, of the legal name of the entity controlled by the defendant which posted the collateral funds with the bonding company and to which the refund of the funds is payable. As to this claim of contempt, the court finds that the plaintiff has not proven by clear and convincing evidence that the defendant has wilfully violated the order to pay [one] half of the proceeds of the bond to her. However, the order has not been complied with, and the court enters remedial orders intended to secure such compliance.

"As to the second claim, the court finds that the plaintiff has proven the following elements of contempt by clear and convincing evidence. The defendant had notice of the court's order of November 16, 2009, requiring him to provide the plaintiff with a written report every six months on the status of the bond and his efforts to comply with the order to share the proceeds of it with her. . . . His noncompliance was wilful. The court therefore finds the defendant in contempt of the order . . . . The award to the plaintiff of attorney's fees and travel expenses as hereinafter set forth is attributable, in part, to this finding of contempt."

The court then found the defendant in contempt for failing to provide the plaintiff with copies of his annual income tax returns, 1099 forms and K-1 forms by April 15 of each calendar year, as well as for failing to provide the plaintiff with a copy of his passport. The court noted that its award to the plaintiff of attorney's fees and travel expenses is also attributable, in part, to these

additional findings of contempt. The court did not find the defendant in contempt relative to the plaintiff's claims that he failed to disclose an American Express credit card or that he failed to provide her with a credit report.

As part of its ruling on the February 23, 2017 amended motion for contempt, the court ordered the defendant to pay to the plaintiff within thirty days the sum of $391.50 in reimbursement of the defendant's wire transfer charges that had reduced the amount of alimony the plaintiff received. It also ordered the defendant to provide the plaintiff's attorney with a detailed monthly written statement of his efforts to collect the cash collateral held by the bonding company until he has paid one half of the bond proceeds as required by the 2004 dissolution judgment. The court also ordered that "[i]f for any reason the defendant has not paid the plaintiff in full for her [one] half of the bond proceeds . . . on or before October 31, 2017, then the unpaid portion due to the plaintiff shall accrue interest at the rate of [5 percent] . . . per annum commencing on November 1, 2017, and continuing until the unpaid portion plus accrued interest has been paid in full, with any partial payments after November 1, 2017, to be applied first to interest and then to principal." Finally, the court ordered the defendant to pay the plaintiff within thirty days the sum of $2000 in attorney's fees plus $1000 toward the plaintiff's travel expenses to attend the hearing.[8]

With respect to the amended motion for modification of alimony, the court reviewed the financial affidavits filed by each party at the time of the entry of the February 20, 2007 order and found by a preponderance of the evidence that the defendant's circumstances had improved substantially since that date in two ways. First, the defendant had remarried, and his current wife provides the bulk of his financial support. Second, since February 20, 2007, there had been a significant increase in the defendant's net worth. His assets had increased in value by over $400,000, and his liabilities had decreased by almost three million, from $5,371,775 to $2,393.818. The court noted that it found the defendant "to be significantly lacking in credibility," particularly as to the nature of the financial support that his current wife provides him. The defendant claimed that sums contributed to his legal expenses and deposited into his bank account were loans from his current wife, but the court, noting the lack of any promissory note or evidence of any repayment, found that they were gifts, and that such gifts were continuing regularly. In addition, the court found that the defendant's current wife paid for the bulk of the couple's expenses, including the mortgage, taxes and other expenses for two condominium units, one in Connecticut and one in South Carolina; country club memberships; and travel and dining out, beyond that which the defendant could

afford on his reported income.

The court found that the defendant's net weekly income was therefore comprised of four elements: his reported weekly income of $586 on his financial affidavit, the average weekly amount he has received from his current wife for ongoing legal fees in the amount of $263, the average weekly amount of gifts of cash provided to him by his current wife for deposit into his bank account in the amount of $90, and $254 in excess weekly expenditures for which the only payment source in evidence is the defendant's current wife, as the defendant's weekly expenses and liability payments exceed his net weekly income. As a result of its consideration of these four elements, the court found the defendant's net weekly income to be $1193.

The court found that the plaintiff's net weekly income as of the date of the hearing was $567, excluding alimony payments. This income calculation included recurring financial support from her son. The court further found that the plaintiff's needs and expenses reasonably required a greater amount of income than the existing alimony order provided her.

Accordingly, the court granted the plaintiff's amended motion for modification and ordered the defendant to pay the plaintiff $1300 per month in alimony retroactive to July 1, 2015, the first month following the date of service of her initial motion for modification on the defendant.[9] The retroactive order generated an arrearage of $16,580, which the court ordered payable in sixteen consecutive monthly installments of $1000, followed immediately by a final monthly installment of $580, commencing on July 15, 2017.

The court also denied the parties' respective motions for attorney's fees, finding no adequate basis for either request. The court indicated that it previously had awarded the plaintiff attorney's fees after finding that the defendant was in contempt of court orders. This appeal followed.

Before addressing the defendant's claims, we set forth the standard of review that applies to our review of the orders challenged on appeal. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Schwarz* v. *Schwarz*, 124 Conn. App. 472, 476, 5 A.3d 548, cert. denied, 299 Conn. 909, 10 A.3d 525 (2010). "As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic

relations case. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Citations omitted; internal quotation marks omitted.) *Gabriel* v. *Gabriel*, 324 Conn. 324, 336, 152 A.2d 1230 (2017).

## I

The defendant's first claim is that the court abused its discretion when it granted the plaintiff's amended motion for modification of alimony and increased his payments to $1300 per month. The defendant claims that there was insufficient evidence to support the court's finding that the money his current wife contributes to his expenses or advances to him were gifts, rather than loans. He also claims that the modified alimony payment, coupled with the order to pay $1000 per month on the arrearage created by the retroactivity for a total of $2300 per month, constitutes 89 percent of his weekly net income.

Modification of alimony after the date of a dissolution judgment, unless and to the extent that the decree precludes modification, is governed by General Statutes § 46b-86. *Schwarz* v. *Schwarz*, supra, 124 Conn. App. 476. "When . . . the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances. . . . The change may be in the circumstances of either party. . . . The date of the most recent prior proceeding in which an alimony order was entered is the appropriate date to use in determining whether a significant change in circumstances warrants a modification of an alimony award." (Internal quotation marks omitted.) *Rubenstein* v. *Rubenstein*, 172 Conn. App. 370, 375,160 A.3d 419 (2017).

"In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. . . . More specifically, these criteria, outlined in General Statutes § 46b-82, require the court to consider the needs and financial resources of each of the parties . . . as well as such factors as the causes for the dissolution of the marriage and the age, health, station, occupation, employability and amount and sources of income of the parties." (Internal quotation marks omitted.) *Schwarz* v. *Schwarz*, supra, 124 Conn. App. 477. When the initial alimony award was not sufficient to fulfill the underlying purpose of the award, to ensure the continued enjoyment of the standard of living that the supported spouse enjoyed during the marriage, an increase in the supporting spouse's income, in and of

itself, may justify an increase in the award. See *Dan* v. *Dan*, 315 Conn. 1, 15–16, 105 A.3d 118 (2014).

The defendant's claims concerning the modification of his alimony payments, to approximately double what he had been paying, essentially concern whether the court appropriately categorized the financial contributions his current wife had been providing to him. We interpret his claim as an assertion that the court erroneously found an increase in his weekly net income from $568, which was the amount he stated on his financial affidavit, to $1193, by incorrectly assuming that his current wife's contributions to him, totaling approximately $137,000, constituted gifts rather than loans that he was obligated to repay. We disagree.

"Whether money should be characterized as income or a loan is a question of fact for the trial court. . . . This is often a matter that turns on the credibility of the parties and whether any documentation of the loans was provided. Compare *Zahringer* v. *Zahringer*, [124 Conn. App. 672, 678–79, 6 A.3d 141 (2010)] (court, after determining that parties, including father's accountant, were credible and that documentation had been created, held that payments were loans), with *Desai* v. *Desai*, 119 Conn. App. 224, 236–37, 987 A.2d 362 (2010) (court, after determining that parties were not credible and that documentation was lacking, held that payments were not loans)." (Citation omitted.) *Keller* v. *Keller*, 167 Conn. App. 138, 152, 142 A.3d 1197, cert. denied, 323 Conn. 922, 150 A.3d 1151 (2016).

In the present case, although the defendant asserts that the contributions from his current wife were loans that he would have to repay in the future and, thus, should not be considered in the alimony calculation, the court did not find his testimony on the subject to be credible. No promissory note or other documentary evidence was presented to support the defendant's contention that the payments were loans, and there was no evidence that any terms of repayment existed or that any repayment had ever been made or tendered during the entire course of the defendant's current marriage—a period of approximately ten years.

In addition to finding that all the funds advanced to the defendant by his current wife had been gifts and not loans, the court also found that the evidence showed that the defendant's current wife pays the bulk of the couple's expenses. The court noted that the plaintiff and his current wife led a lifestyle with a level of luxury beyond that which the defendant could afford given the income he reported on his financial affidavit. The court noted that the defendant did not include on his financial affidavit recurring deposits of funds from his current wife into his personal bank account, which the court also determined were gifts and not loans. The court highlighted the fact that some of the funds that the defendant's current wife had given to him and spent

for his benefit came from income she received through her position as owner and managing member in an entity, Hampton Ventures, LLC, which owns and rents office space within real property located at 1100 New Britain Avenue in West Hartford. The defendant testified that in 2005, his dissolved company, R.E.T. Capital Corporation, of which he was the sole owner, had lent his current wife $225,000 in order to purchase this rental property. He further testified that despite the fact that a balloon provision in the promissory note required payment in full by May, 2015, the loan had not been repaid; rather, the date the note was payable had been "extended" to some unspecified time.

The court based its determination concerning the financial contributions of the defendant's current wife on the testimony of both parties, the defendant's financial situation, and his spending habits, which included country club fees and the maintenance of two residences. We conclude that the court did not abuse its discretion by factoring into its calculation of the defendant's weekly income the amounts advanced to him by his current wife and the expenditures she had paid on his behalf. The court concluded that the financial needs of the defendant were less than they were at the time of the February 20, 2007 order by reason of the necessities and amenities provided to him by his current wife above and beyond the funds she gives to him and uses to pay his expenses. The court was correct in considering the income of the defendant's current wife because it was relevant to his current expenses, a material factor in determining his current net income and, therefore, his ability to pay the increased alimony. See *McGuinness* v. *McGuinness*, 185 Conn. 7, 12–13, 440 A.2d 804 (1981).

We further conclude that the court's modified monthly alimony order of $1300 per month plus $1000 per month on an arrearage of $16,580 is not excessive, as the defendant's arguments suggest, in light of the defendant's net monthly income of $4772 ($1193 multiplied by 4.3) and the needs and expenses of the plaintiff, whose current weekly net income, excluding alimony but including additional support of $186.05 per week, a recurring gift from her son, was determined to be $567. This order nearly equalizes the parties' incomes, as originally intended in the dissolution judgment.

The defendant also argues that the court failed to take into account additional income he alleges that the plaintiff derives from renting the parties' former marital home in Avon. The only evidence with respect to her renting those premises came through the testimony of the plaintiff and her son, Jeffrey Nappo. Both indicated that the property had been foreclosed and there was no longer any rental income being generated. The defendant offered no contrary evidence and, viewed in light of the evidence before the court, its failure to attribute

rental income to the plaintiff is not clearly erroneous.

## II

The defendant's second claim is that the court improperly sanctioned him for his contempt of certain court orders and entered additional orders to remediate his failure to fully comply with others.[10] The defendant specifically takes issue with (1) the court's award to the plaintiff of attorney's fees and travel expenses totaling $3000, (2) the court's remedial order that he pay 5 percent interest on any portion of the plaintiff's one-half share of the bond money that remained unpaid after October 31, 2017, and (3) the court's order that he reimburse the plaintiff $391.50 for unpaid alimony as a result of wire transfer fees deducted by the defendant's bank from his alimony payments. We decline to review the first aspect of this claim related to the award of travel expenses and attorney's fees because it was not raised before the trial court. With respect to the other aspects of the claim, we conclude that the remedial orders pertaining to the wire transfer fees and the 5 percent interest on the unpaid balance of the plaintiff's share of the bond money effective November 1, 2017, reflected a proper exercise of the court's inherent authority to effectuate its judgment. See, e.g., *Perry* v. *Perry*, 156 Conn. App. 587, 595, 113 A.3d 132, cert. denied, 317 Conn. 906, 114 A.3d 1220 (2015); *O'Halpin* v. *O'Halpin*, 144 Conn. App. 671, 677–78, 74 A.3d 465, cert. denied, 310 Conn. 952, 81 A.3d 1180 (2013).

## A

We first address the court's award of travel expenses and attorney's fees to the plaintiff, which the court indicated were sanctions it was imposing upon finding the defendant in contempt for failure to provide the plaintiff with periodic reports on the status of his efforts to obtain release of the $375,000 bond; copies of his annual tax returns, 1099 forms, and K-1 forms by April 15 of each calendar year; and a copy of his passport.

The following additional facts are relevant to this claim. The plaintiff sought reimbursement for and presented evidence of her travel expenses from Florida to Connecticut on October 16, 2015, and January 15, 2016, totaling $1929.35.[11] These trips were for previously scheduled hearings on her amended motion for contempt and amended motion for modification.[12] On October 16, 2015, the defendant appeared through counsel, but the hearing did not go forward. On that date, the court ordered a continuance to January 15, 2016, and noted that the defendant "acknowledges his obligation to appear on that date." The court also reserved the plaintiff's "right to seek reimbursement of expenses incurred for her trips to Connecticut for the hearing held today and July 14, 2015 on which the [plaintiff's motion for modification and motion for contempt] were scheduled to be heard."

On January 15, 2016, the defendant moved for a continuance, which the court granted on the condition that he pay the plaintiff certain travel expenses as listed on plaintiff's exhibit 1. In its written order, the court stated: "By agreement of the parties, [the defendant] shall pay within one week of today, the sum of $1500 to [the plaintiff] of which $714.66 is to reimburse her for her travel expenses to appear in court today. The balance is subject to adjustment and *will be applied toward the cost of her return trip for the continued hearing.*[13] The court continues to reserve [the plaintiff's] right to seek reimbursement for prior trips as previously ordered by the court." (Emphasis added; footnote added.) During the hearing on February 18, 2016, the court inquired of the plaintiff whether the defendant had paid her funds in compliance with his January 15 order, and she indicated that she had received $1500. The plaintiff further testified that she had traveled from Florida to Connecticut a third time for the February 18, 2016 hearing. Upon finding the defendant in contempt, the court ordered that he pay the plaintiff an additional $1000 for travel expenses.

The plaintiff, through counsel, also requested that she be reimbursed for attorney's fees of $5000 for each contempt motion. The court, having found the defendant in contempt on some, but not all, of the allegations contained in her amended motion for contempt, awarded the plaintiff $2000 in attorney's fees.

On appeal, the defendant does not dispute the court's calculation of the amounts awarded to the plaintiff for travel expenses and attorney's fees. His only claim is that it was unfair to award attorney's fees and travel expenses to the plaintiff because, on December 1, 2014, she failed to appear for a prior hearing, and that the court denied his motion for sanctions for expenses related to the cost of preparing for that hearing.

First, we observe that the motion for sanctions to which the defendant refers, filed on January 27, 2014, was brought to address the plaintiff's failure to comply with his discovery requests and to file a financial affidavit, not due to her failure to appear in court on December 1, 2014. Second, although, throughout his appellate brief, the defendant has failed to cite to the record, we have conducted a thorough search of the transcripts and the written motions presented to the trial court and have determined that this particular justification for denying the plaintiff's requests for travel expenses and attorney's fees—that *he* also had incurred travel expenses and attorney's fees in preparation for a December 1, 2014 hearing at which the plaintiff failed to appear—was not adequately raised before the trial court and, thus, is unpreserved.

On February 3, 2016, the defendant filed a motion for attorney's fees on which he presented no evidence,

but his counsel did argue this motion at the close of the hearing on March 10, 2017. In his motion, the defendant raised two claims: (1) if the court did not find the plaintiff in contempt, the defendant should be awarded fees pursuant to General Statutes § 46b-87; and (2) the defendant should be awarded attorney's fees for defending the plaintiff's *pending* motions because this was the third time the defendant had to prepare to defend similar motions filed by the plaintiff. During closing arguments, however, counsel for the defendant asked the court to award the defendant fees *if* it did not find the defendant in contempt[14] or *if* it did not grant the plaintiff's amended motion for modification. The court, having found the defendant in contempt and having granted the plaintiff's amended motion for modification, denied the defendant's motion for attorney's fees, finding there was no basis for it.[15] At no point did the defendant seek reimbursement or claim any right of set off for travel expenses or attorney's fees incurred in attending court to defend previous motions that had been scheduled to be heard on December 1, 2014. Additionally, he did not present any evidence as to the amount of such expenses he had incurred. Consequently, the defendant is unable to challenge the court's order on this unpreserved ground.

B

We next address the defendant's claim that the court abused its discretion in ordering him to commence paying interest on the plaintiff's share of the bond proceeds if the bond was not released on or before October 31, 2017.

"[A] trial court possesses inherent authority to make a party whole for harm caused by a violation of a court order, even when the trial court does not find the offending party in contempt." *O'Brien* v. *O'Brien*, 326 Conn. 81, 96, 161 A.3d 1236 (2017). In addition, it has long been settled that a trial court has the authority to enforce its own orders. This authority arises from the common law and is inherent in the court's function as a tribunal with the power to decide disputes. See *Papa* v. *New Haven Federation of Teachers*, 186 Conn. 725, 737–78, 444 A.2d 196 (1982). A remedial award does not require a finding of contempt. Rather, "[i]n a contempt proceeding, even in the absence of a finding of contempt, a trial court has broad discretion to make whole a party who has suffered as a result of another party's failure to comply with a court order." (Emphasis omitted; internal quotation marks omitted.) *Clement* v. *Clement*, 34 Conn. App. 641, 647, 643 A.2d 874 (1994); see also *Brody* v. *Brody*, 153 Conn. App. 625, 636, 103 A.3d 981, cert. denied, 316 Conn. 910, 105 A.3d (2014).

We further recognize that "[a]lthough [a] court does not have the authority to modify a property assignment, [the] court, after distributing property, which includes assigning the debts and liabilities of the parties, does

have the authority to issue postjudgment orders effectuating its judgment." (Internal quotation marks omitted.) *O'Halpin* v. *O'Halpin*, supra, 144 Conn. App. 677–78. "[A]n order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties timely compliance therewith." (Internal quotation marks omitted.) Id., 677; see *Perry* v. *Perry*, supra, 156 Conn. App. 595.

The following additional facts are relevant to this claim. The court heard evidence that at least since the defendant had received a letter dated July 11, 2016, from the bonding company, he was on notice that he needed to move to open the bankruptcy judgment to correct the name of the entity that had posted the bond in the bankruptcy order so that the order reflected "Tri-State Terminals Inc." instead of "Tri-State Terminals Corp." Acknowledging that he was familiar with this letter, the defendant testified on March 9, 2017, that he had yet to hire a lawyer or take any other action to correct the misnomer in the bankruptcy order.

As previously noted in this opinion, on the basis of the evidence submitted to the court for its consideration as to why the defendant had failed to obtain the release of the bond, the court found that the defendant had not yet obtained the release due to the fact that the bonding company was not required to release the funds that had been posted to secure the issuance of the bond until the expiration of the statute of limitations on the liabilities that the bond was intended to protect against, a period that apparently expired on or about April 16, 2016. After the passage of that date, the court found that the release of the funds had been further delayed due to a technical error in the statement, in a related bankruptcy proceeding, of the legal name of the entity controlled by the defendant that posted the collateral funds with the bonding company and to which the refund of the funds is payable. Although the court found that the defendant was not in contempt, it expressed its concern that compliance was lacking and entered remedial orders intended to secure compliance in the near future. In particular, the court ordered that "[i]f for any reason the defendant has not paid the plaintiff in full for her [one] half of the bond proceeds . . . on or before October 31, 2017, then the unpaid portion due to the plaintiff shall accrue interest at the rate of [5 percent] . . . per annum commencing on November 1, 2017, and continuing until the unpaid portion plus accrued interest has been paid in full, with any partial payments after November 1, 2017, to be applied first to interest and then to principal." The court then found the defendant in contempt for wilfully failing to provide the plaintiff with a written report every six months, as ordered by the court on November 16, 2009, as to the status of his efforts to obtain release of the bond.

Given the impediments of which the court was made

aware and the fact that over twelve years had elapsed since the dissolution court had ordered the defendant to obtain the release of the bond and share the proceeds equally with the plaintiff, the court reasonably determined that the defendant, in the exercise of due diligence, would be able to resolve the payment issue if given several additional months to obtain the release of the bond. "It would defy common sense to conclude that, merely because a party's violation of a court order was not wilful, the trial court is deprived of its authority to enforce the order." *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 241–42, 796 A.2d 1164 (2002). In fact, the defendant now admits in his appellate brief that the bonding company has been willing to release the bond money since December, 2017. Accordingly, we conclude that court did not abuse its discretion in ordering the defendant to commence paying interest on the plaintiff's share of the bond proceeds if the bond was not released on or before October 31, 2017.[16]

C

The final aspect of the defendant's claim is that the court improperly ordered that the defendant reimburse the plaintiff $391.50, the sum deducted from his alimony payments by his bank after he agreed to wire transfer alimony payments directly to the plaintiff's bank. The court determined that this resulted in the defendant failing to pay the plaintiff the full amount of alimony owed.

We find no abuse of discretion on the part of the court in issuing this particular remedial order. Although the court did not find the defendant in contempt for failure to pay alimony in a timely fashion, it noted that the parties had informally agreed to have the defendant wire the plaintiff's alimony payments directly to her bank account and that each party had incurred charges from their respective banks as a result. The court deemed it equitable, and we agree, that each party should be responsible for his or her own bank's charges, and noted that as a result of the defendant having not directly paid his wire transfer costs, the plaintiff's alimony checks for the period of time that her payments were wired to her bank were reduced by a total of $391.50. This remedial order was proper in that it compensated the plaintiff for a minor alimony deficiency even though the defendant's violation was not wilful. "Irrespective of whether a violation is wilful, the party violating a court order properly may be held responsible for the consequences of the violation. To hold otherwise would shift the cost of the violation to the innocent party." *O'Brien* v. *O'Brien*, supra, 326 Conn. 101.

"Although ordinarily our trial courts lack jurisdiction to act in a case after the passage of four months from the date of judgment; see General Statutes § 52-212a; there are exceptions. One exception arises when the

exercise of jurisdiction is necessary to effectuate prior judgments or otherwise enforceable orders. . . . [Our Supreme Court has rejected a] hypertechnical understanding of the trial court's continuing jurisdiction to effectuate prior judgments. . . . [T]he trial court's continuing jurisdiction is not separate from, but, rather, derives from, its equitable authority to vindicate judgments. . . . [S]uch equitable authority . . . [derives] from its inherent powers . . . and is not limited to cases wherein the noncompliant party is in contempt . . . ." (Internal quotation marks omitted.) *Brody* v. *Brody*, supra, 153 Conn. App. 635.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff did not participate in this appeal. This court entered an order on June 28, 2018, that indicated that this appeal would be considered solely on the basis of the defendant's brief and appendices, and the record in light of the plaintiff's failure to comply with this court's June 1, 2018 order requiring her to file a brief and appendix on or before June 15, 2018.

[2] In his statement of issues in his principal brief, the defendant claims that the court's modification of the alimony award and its order of payments on the resultant alimony arrearage was excessive in light of his income, and that the court improperly treated his current wife's contributions to his financial support as gifts rather than loans. For ease of discussion, we will address these claims together.

[3] The court further indicated that the defendant's "testimony that he has no hidden assets is not credible, but the court has no direct evidence of what assets he may have and therefore assigns no value to any assets except those introduced into evidence."

[4] It is apparent that this modifiable $1 per year alimony order and the requirement of notice to the other party of any change in income or employment supports the dissolution court's conclusion that the defendant might one day achieve a higher level of income than the small income his Mobil Corporation pension and social security benefits were providing him at the time, which might justify an upward modification of alimony.

[5] The court noted that despite apparent changes in the parties' respective social security incomes since 2007, there had been no subsequent recalculation of the appropriate amount due under the formula set forth in the 2004 dissolution judgment.

[6] The orders of the court pertaining to the defendant's American Express credit card, passport, and credit report were a result of the plaintiff's ongoing attempts to obtain full disclosure of the defendant's financial status in order to pursue her contempt and modification motions.

[7] The plaintiff also sought an award of attorney's fees in both of her contempt motions.

[8] At the time of the hearing, both parties resided outside of Connecticut and were required to travel to Connecticut to attend the hearing.

[9] General Statutes § 46b-86, which governs modification of alimony, provides in relevant part: "No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50. . . ."

[10] The hearing on the plaintiff's two contempt motions was commenced on February 8, 2016. The defendant has failed to provide this court with a transcript of the proceedings that transpired on that date in accordance with Practice Book § 63-8. This defect in the appeal does not hamper our review, however, because the trial court file contains a copy of a certified transcript of the proceedings on February 8, 2016, which the defendant's counsel provided to the trial court at the commencement of a subsequent trial hearing in this matter on March 9, 2017.

[11] The hearing on the plaintiff's amended motion for contempt and her amended motion for modification previously had been continued from July 15 to October 16, 2015, with an order to the plaintiff that she serve the defendant with a subpoena.

[12] The plaintiff's second motion for contempt was not filed until January 27, 2016.

[13] The court subsequently continued the hearing to February 18, 2016.

[14] The defendant claimed fees for defending the contempt motions pursuant to § 46b-87, which provides, in relevant part, that "if any . . . person is found *not* to be in contempt of such order, the court may award a reasonable attorney's fee to such person. . . ." (Emphasis added.)

[15] Apart from the defendant's counsel apprising the court of his hourly rate, the court was provided with no evidence of the amount of fees being sought relative to this litigation.

[16] The defendant also appears to claim that the order of interest is improper because, in his words, "[the bonding company] has been willing to release the [b]ond since December, 2017, if [the plaintiff] signs the required release form from [the bonding company]. Since [the plaintiff] has not signed the release to date, [the defendant] was forced to file a motion to compel postjudgment . . . on March 23, 2018." The defendant did not raise this argument before the trial court, a failing that is readily apparent in light of the fact that the defendant also explains in his appellate brief that the bonding company was first willing to release the bond, following a release by the plaintiff, in December, 2017—six months *after* the trial court rendered the judgment from which he now appeals. Likewise, the defendant draws our attention to a motion to compel, which was filed by him in the trial court approximately nine months *after* the court rendered the judgment from which he now appeals, in which he asks the court to order the plaintiff to sign the release so that the funds may be distributed in accordance with the court's order in the dissolution judgment. Because the plaintiff did not raise this claim concerning the release of the bond before the trial court in connection with the judgment from which he appeals, we decline to address it on appeal. See *Ahmadi* v. *Ahmadi*, 294 Conn. 384, 395, 985 A.2d 319 (2009) ("[a] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one" [internal quotation marks omitted]).