******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JEFFREY RUBENSTEIN *v.* BONNIE RUBENSTEIN
(AC 38137)

Sheldon, Beach and Pellegrino, Js.

*Argued January 17—officially released April 18, 2017*

(Appeal from Superior Court, judicial district of New London, Hon. Hadley W. Austin, judge trial referee [dissolution judgment]; Moukawsher, J. [motion for modification].)

*Michael J. Cartier*, for the appellant (defendant).

*Sandra M. McDonough*, for the appellee (plaintiff).

*Opinion*

SHELDON, J. The defendant, Bonnie Rubenstein, appeals from the judgment of the trial court modifying the periodic alimony order that she previously had been ordered to pay to the plaintiff, her former husband, Jeffrey Rubenstein. Although the defendant's brief is not a model of clarity, her claims on appeal can be distilled as follows. The defendant claims that the trial court erred in modifying the alimony order because (1) it improperly relied upon the defendant's receipt of an inheritance as the substantial change in circumstances upon which it based said modification, (2) it erroneously concluded that the plaintiff's financial circumstances had worsened since 2006, and (3) it improperly changed the character of the alimony award when it ordered an increased periodic order of alimony instead of the lump sum that the plaintiff had requested. We disagree with all of the defendant's claims, and therefore affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion. "In March, 1996, the plaintiff filed an action seeking to dissolve the parties' three and one-half year marriage. In September, 1997, while the dissolution action was pending, the defendant removed the parties' minor son from Connecticut in derogation of the court's orders. . . . A few months after the disappearance of the defendant, on December 5, 1997, the court, *Hon. Hadley W. Austin*, judge trial referee, dissolved the parties' marriage and, after finding that the plaintiff had accumulated considerable debt in the search for his son, ordered the defendant to pay alimony and child support to the plaintiff. The alimony order stated specifically that '[t]he defendant shall pay to the plaintiff the amount of $50 per week as alimony, without prejudice.' The whereabouts of the defendant and the child were not known until 2002, when they were discovered by federal law enforcement officers and returned to Connecticut.

"Following the defendant's return to the jurisdiction, both parties filed motions to modify the December, 1997 alimony and child support award. Following a July 11, 2006 hearing at which both parties testified, the court, *Gordon, J.*, on November 16, 2006, filed a memorandum of decision construing the parties' motions to modify as motions for de novo review of the alimony order. The court concluded that '[b]oth the plaintiff and the defendant have good earning capacities, but the plaintiff's financial situation was more dire, and moreover, it was caused by the conduct of the defendant. It is only equitable that she assists his support through a continuing order of alimony. Therefore, the court [orders that] the defendant shall pay to the plaintiff, as alimony, $50 per week until the death of either party. . . .' " (Footnote omitted.) *Rubenstein* v. *Rubenstein*, 107 Conn. App. 488, 491–93, 945 A.2d 1043, cert. denied,

289 Conn. 948, 960 A.2d 1037 (2008). The defendant appealed the trial court's 2006 alimony order, which this court affirmed. Id.

In 2015, the court, *Moukawsher, J.*, revisited the alimony order when the parties again filed dueling motions to modify. Following an evidentiary hearing, the trial court issued a memorandum of decision wherein it found that there had been a substantial change in circumstances that justified a modification of the order. After considering the parties' financial circumstances in accordance with the relevant statutory factors set forth in General Statutes § 46b-82, the court modified the periodic order from $50 per week to $200 per week.[1] Thereafter, the defendant moved for articulation of the trial court's decision, which was denied. This appeal followed.

We begin by setting forth our standard of review. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . .

"Trial courts have broad discretion in deciding motions for modification. . . . Modification of alimony, after the date of a dissolution judgment, is governed by General Statutes § 46b-86. . . . When . . . the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances. . . . The change may be in the circumstances of either party. . . . The date of the most recent prior proceeding in which an alimony order was entered is the appropriate date to use in determining whether a significant change in circumstances warrants a modification of an alimony award. . . .

"In general the same sorts of [criteria] are relevant in deciding whether the decree may be modified as are relevant in making the initial award of alimony. . . . More specifically, these criteria, outlined in . . . § 46b-82, require the court to consider the needs and financial resources of each of the parties . . . as well as such factors as the causes for the dissolution of the marriage and the age, health, station, occupation, employability and amount and sources of income of the parties." (Internal quotation marks omitted.) *Schwarz* v. *Schwarz*, 124 Conn. App. 472, 476–77, 5 A.3d 548, cert. denied, 299 Conn. 909, 10 A.3d 525 (2010).

"Although financial orders in family matters are generally reviewed for an abuse of discretion . . . this court applies a less deferential standard when the decision of the trial court is based not on an exercise of discretion but on a purported principle of law. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Citations omitted; internal quotation marks omitted.) *Hornung* v. *Hornung*, 323 Conn. 144, 152, 146 A.3d 912 (2016).

With the foregoing principles in mind, we turn to the defendant's claims on appeal.

I

First, the defendant claims that the trial court erred in basing its finding of a substantial change in circumstances on an inheritance that she received as a result of the death of her third husband. We disagree.

In examining the circumstances of the parties since the last alimony order in 2006, the trial court noted that the defendant's financial circumstances had substantially changed since then in that her assets had increased from approximately $100 to $1 million as a result of her receipt of an inheritance from her third husband's estate. The court also determined that there had been a substantial change in the plaintiff's financial circumstances since the 2006 alimony order, namely, that the plaintiff was "out of work, still in debt and out of his home." The trial court found that, in 2008, the plaintiff "became disabled from all work." The court further found that, in 2006, the plaintiff resided in a house that belonged to his parents, and that he was supposed to inherit that house, but that that house was sold to partially reimburse the plaintiff's father for expenses incurred in searching for the parties' minor child. Consequently, the plaintiff "now lives in a far inferior home." On those bases, the court concluded that there had been a substantial change in the plaintiff's circumstances that warranted a modification of the alimony order.

The defendant claims that the trial court's consideration of her inheritance is contrary to the law prescribed in *Dan* v. *Dan*, 315 Conn. 1, 105 A.3d 118 (2014), wherein our Supreme Court held that "when the sole change in circumstances is an increase in the income of the supporting spouse, and when the initial award was and continues to be sufficient to fulfill the intended purpose of that award, we can conceive of no reason why the supported spouse, whose marriage to the supporting spouse has ended and who no longer contributes anything to the supporting spouse's income earning efforts, should be entitled to share in an improved standard of living that is solely the result of the supporting spouse's

efforts." (Emphasis omitted.) Id., 14–15.

The court's holding in *Dan* is inapposite to this case. Here, the trial court's decision cannot reasonably be construed as relying solely on the change in the defendant's financial circumstances based upon the receipt of the inheritance. A fair reading of the decision in this case reveals that the principal basis for the court's finding of a substantial change in circumstances was the worsening of the plaintiff's circumstances, specifically the complete loss of his earning capacity and the loss of his residence. The court found that because the plaintiff's financial situation had worsened since 2006, he had an increased need for support. The defendant's argument that the trial court acted in contravention of the holding in *Dan* is thus unavailing.

## II

The defendant next claims that the court erroneously concluded that the plaintiff's "station of life" and "station of debt" had worsened since the 2006 alimony order. To the contrary, the defendant argues that the court found that the plaintiff no longer owed a debt to his father for expenses that had been incurred in the search for the parties' minor child and that, unlike in 2006, the plaintiff was finally able to meet his weekly expenses. We disagree.

After it found a substantial change in circumstances, the court undertook an analysis of the factors enumerated in § 46b-82 to determine the new alimony order. In so doing, the court compared the parties' current financial circumstances to their circumstances in 2006. As for the plaintiff's circumstances, the court found, inter alia, that, in 2008, the plaintiff "became disabled from all work." The court noted that the plaintiff also had been required to sell the home in which he had been residing in order to partially reimburse his father for expenses incurred in the search for the minor child. The court reasoned: "[The plaintiff] says he is spending every cent he receives in alimony and disability payments on the most rudimentary living expenses—about $370 a week. The evidence indicates that [the plaintiff] paid off over $250,000 of the debt [that he owed to his father as a result of searching for his child] and that [the defendant] has paid him around $48,000 in alimony. The debt at issue in the original order was around $500,000. This means about $200,000 is left. Given [the defendant's] current finances, it would hardly hurt her and would rescue [the plaintiff] from the brink of penury if she paid an additional $150 per week."

The defendant's claim that the court found that the plaintiff no longer owed a debt to his father is belied by the court's written decision, wherein it expressly found that the plaintiff's outstanding debt to his father totaled approximately $200,000. Although the court acknowledged the partial reduction of the plaintiff's

debt to his father since 2006, it explained: "[P]aying part of the debt significantly lowered [the plaintiff's] station in life so he is hardly better off." The court expressly rejected the defendant's argument that the plaintiff's circumstances had not worsened since he was able now to meet his weekly expenses. The court stated that: "It also makes no difference that [the plaintiff] is now living within his limited means when he was not in 2006. This has reduced his station in life." The defendant does not challenge on appeal the factual bases for the court's finding in this regard, but, rather, suggests that the evidence should be viewed from a different perspective. We disagree. The trial court's determination that the plaintiff's financial circumstances had worsened as a result of his total loss of earning capacity and the fact that he was forced to sell his residence to pay a portion of his debt, while a significant portion of that debt remained outstanding, is supported by the record and is legally and logically sound. We, thus, disagree with the defendant that the trial court erred in so finding.

### III

Finally, the defendant claims that the court improperly changed the character of the alimony award when it increased the periodic order of alimony instead of awarding the lump sum requested by the plaintiff. The trial court explained: "[The plaintiff's] request for a lump sum payment is rejected. The [alimony] order is for needed support. If [the plaintiff] remarried or inherited money, his financial circumstances might substantially improve. In the meantime, [the defendant's] inheritance will likely shrink. This means a different award may be appropriate in the future and that any lump sum logically calculated today might prove inequitable tomorrow."

The defendant argues that the court improperly "changed the character of the alimony from repayment of an alleged debt to one of support of the plaintiff." In so arguing, the defendant ignores the stated purpose of the 2006 order, which was "to assist [the plaintiff's] support." To be sure, the court considered the "monumental debt" sustained by the plaintiff in assessing his need for support. The 2006 order is clear, however, that the alimony was for the continuing support of the plaintiff, not to repay that debt of approximately $500,000 at a rate of $50 per week. The court's order increasing the periodic order, which is also based upon the plaintiff's "needed support," is entirely consistent with the expressed purpose of the 2006 order. As noted, the trial court is vested with wide discretion in fashioning alimony orders. The court acted well within its discretion in modifying the periodic order, and, in fact, in so doing, entered an order that was more beneficial to the defendant than a lump sum order.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] As with the 2006 order, the trial court ordered the alimony to last until the death of either party. The court added here that it would also be modifiable upon cohabitation pursuant to General Statutes § 46b-86 (b).

————————————————————