******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# GORDON RANDOLPH *v.* DONNA MAMBRINO ET AL.
## (AC 42742)

Alvord, Elgo and Palmer, Js.

*Syllabus*

Pursuant to statute (§ 52-595), if a person fraudulently conceals the existence of a cause of action, that cause of action shall be deemed to accrue against such person when the person entitled to bring an action thereon first discovers its existence.

The petitioner, who had been convicted, on a guilty plea, of various crimes in connection with his role in an armed robbery, filed a petition for a new trial, claiming that he was entitled to a new trial because several newly discovered letters written by an individual named "Iris S." contained evidence establishing his innocence and that the respondents, a senior assistant state's attorney and the state of Connecticut, had possession of the letters and knowledge of their contents at the time of his guilty plea but purposefully failed to disclose them to him. The respondents asserted as a special defense that the petition was time barred because it was not filed within the applicable three year statute of limitations (§ 52-582). The petitioner filed an amended petition for a new trial claiming, inter alia, that the limitation period was tolled by § 52-595 as a result of the respondents' fraudulent concealment of the letters. Thereafter, the respondents filed a motion for summary judgment, arguing that there was no dispute between the parties that the petition was untimely under § 52-582 and that the petitioner's tolling claim failed as a matter of law because he had not adduced facts sufficient to permit a finding of fraudulent concealment. The trial court granted the motion and rendered summary judgment in favor of the respondents. In reaching its decision, the court, relying on *Turner* v. *State* (172 Conn. App. 352), and *Fichera* v. *Mine Hill Corp.* (207 Conn. 204), concluded that the limitation period set forth in § 52-582 is jurisdictional in nature and, therefore, not subject to the tolling provision of § 52-595. Thereafter, the petitioner, on the granting of certification, appealed to this court. *Held*:

1. Contrary to the trial court's conclusion, the tolling provision of § 52-595 applies to the three year limitation period of § 52-582, and, therefore, that limitation period may be tolled by proof of fraudulent concealment: this court concluded that the trial court's reliance on *Turner* and *Fichera* was misplaced, as the principal issue in this case, namely, whether the legislature intended that the limitation period of § 52-582 may be tolled by proof of fraudulent concealment pursuant to the tolling provision of § 52-595, was not addressed in *Turner*, and our Supreme Court's decision in *Fichera* had no bearing on that issue; moreover, given the plain and encompassing language of § 52-595, it must be deemed to apply to any limitation period that does not expressly disclaim its applicability, and, because § 52-582 contains no such disclaimer, its limitation period may be tolled upon a showing of fraudulent concealment pursuant to § 52-595; furthermore, this court could discern no policy consideration that would prompt the legislature to deny the petitioner the benefit of that tolling provision and to conclude otherwise would be to impute to the legislature an intent to countenance such fraudulent concealment, a bizarre and wholly inequitable result that should not be attributed to that body.

2. The judgment of the trial court was affirmed on the alternative ground that the respondents were entitled to summary judgment because the petitioner failed to present evidence sufficient to demonstrate that there was a genuine issue of material fact with respect to his claim that the limitation period of § 52-582 was tolled by the respondents' fraudulent concealment of the letters: the petitioner inadequately briefed the issue of the sufficiency of his showing of fraudulent concealment, as he relied entirely on a patently meritless, if not frivolous, legal argument, the substance of which was set forth in two sentences, and, although he had a second opportunity to address the issue in a reply brief, he failed to do so; moreover, it was apparent that the evidence proffered by

the petitioner in opposition to the respondents' motion for summary judgment, namely, the letters, was inadequate for that purpose, as the letters were not authenticated and, therefore, could not be relied on as probative evidence, the petitioner never identified the author of the letters with any particularity, there was nothing in the record to corroborate the content of the letters, and there was no proof that the respondents received the letters or, if they did, that they concealed them from the petitioner for the purpose of preventing him from seeking a new trial.

Argued February 9—officially released October 25, 2022

*Procedural History*

Amended petition for a new trial following the petitioner's conviction of the crimes of robbery in the first degree, conspiracy to commit robbery in the first degree and kidnapping in the second degree with a firearm, brought to the Superior Court in the judicial district of Hartford, where the court, *Hon. John F. Mulcahy, Jr.*, judge trial referee, granted the respondents' motion for summary judgment and rendered judgment thereon, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed*.

*Gordon Randolph*, self-represented, the appellant (petitioner).

*Nancy L. Chupak*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, former state's attorney, and *Debra A. Collins*, senior assistant state's attorney, for the appellees (respondents).

*Opinion*

PALMER, J. The self-represented petitioner, Gordon Randolph, appeals from the summary judgment rendered by the trial court in favor of the respondents, Donna Mambrino and the state of Connecticut, and its subsequent dismissal of his petition for a new trial. On appeal, the petitioner claims that the trial court incorrectly concluded that General Statutes § 52-595,[1] which provides for the tolling of the statute of limitations applicable to a particular cause of action upon proof by the party bringing the action that the defendant fraudulently concealed the existence of the cause of action, does not toll the three year limitation period of General Statutes § 52-582[2] applicable to petitions for a new trial brought under General Statutes § 52-270.[3] We agree with the petitioner that the trial court incorrectly determined that § 52-595 does not apply to § 52-582. We also conclude, however, that the respondents are entitled to summary judgment because the petitioner, who alleges that the respondents intentionally concealed exculpatory evidence from him in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), has failed to demonstrate that the facts, viewed most favorably to sustaining his claim under § 52-595, are sufficient to satisfy the stringent requirements of that tolling provision. Accordingly, we affirm the judgment of the trial court.

The following facts and procedural history regarding both the petitioner's underlying conviction and the present action are relevant to this appeal. With respect to the petitioner's conviction, the trial court explained: "On August 24, 2012, Hartford police responded to an armed robbery in progress at [a restaurant] on Brainard Road. Upon arrival, a vehicle was observed leaving the area, it was followed by the police across local streets, it proceeded on to the highway, and the vehicle crashed while exiting the interstate. The petitioner was the driver; a passenger in the vehicle subsequently implicated the petitioner in the armed robbery. Inculpatory items of evidence were found in the vehicle. The petitioner was arrested on August 24, 2012, and charged with robbery in the first degree, conspiracy [to commit robbery in the first degree], and kidnapping [in the] second degree with a firearm. [On July 11, 2013, the petitioner] pleaded guilty [pursuant to a plea agreement] to all counts . . . [following] an exhaustive canvass [and a presentence investigation report] was ordered . . . ." He was sentenced on October 17, 2013, in accordance with that agreement to a total effective term of imprisonment of twenty-two years. The petitioner was represented, at all relevant times, by a public defender, R. Bruce Lorenzen. Mambrino, a senior assistant state's attorney, was involved in the prosecution of the case for the state.

The petitioner then filed a petition for a new trial

dated October 7, 2016, alleging that several letters written by someone named "Iris S." contained evidence establishing his innocence in his criminal case and that the respondents had possession of the letters and knowledge of their contents at the time of his guilty plea but purposefully failed to disclose them to him. In their amended answer to the petition, the respondents asserted that the petitioner had "failed to allege anything identifiable that could not have been discovered earlier by the exercise of due diligence, that would be material on a new trial, that is not merely cumulative nor is likely to produce a different result in a new trial," thereby failing to satisfy any of the requirements for a petition for a new trial enumerated by our Supreme Court in *Asherman* v. *State*, 202 Conn. 429, 434, 521 A.2d 578 (1987). The respondents also alleged, by way of a special defense, that the petition was time barred because it was not filed within three years from the date of the petitioner's sentencing as required under § 52-582.[4] In an amended petition for a new trial, the petitioner maintained that § 52-582 was tolled by § 52-595 as a result of the respondents' fraudulent concealment of the "Iris S." letters, which, he further claimed, violated his constitutional rights under *Brady*.

The respondents subsequently filed a motion for summary judgment, arguing that there was no dispute between the parties that the petitioner had not served the respondents within the time frame mandated by § 52-582. The respondents further argued that the petitioner's tolling claim failed as a matter of law because he had not adduced facts sufficient to permit a finding of fraudulent concealment.

At a hearing on the respondents' motion, the court voiced concerns over whether the question of the court's subject matter jurisdiction had been properly addressed. The court then noted that it had provided the parties with several cases to review on that point, including *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 541 A.2d 472 (1988), and *Turner* v. *State*, 172 Conn. App. 352, 160 A.3d 398 (2017). At the hearing, the respondents maintained that the court in *Turner* "was very explicit in . . . conclud[ing] that the [three year] limitation period set forth in [§] 52-582 . . . is jurisdictional in nature," such that the trial court in the present case lacked jurisdiction to consider the petitioner's untimely petition for any reason after the expiration of that period. The petitioner countered that neither *Fichera* nor *Turner* mandated the conclusion that § 52-582 cannot be tolled by proof of fraudulent concealment under § 52-595.

On September 27, 2018, the court granted the respondents' motion for summary judgment. The court relied in large part on this court's determination in *Turner* that § 52-582 is jurisdictional in nature and not subject to equitable tolling. See *Turner* v. *State*, supra, 172

Conn. App. 370. The court also noted that, although *Turner* did not rule on whether § 52-595 applies to § 52-582, it "provide[d] guidance" by citing to *Fichera*, in which our Supreme Court concluded, under the facts of that case, that § 52-595 was unavailable to the plaintiff as a matter of law to toll General Statutes § 42-110g (f), the three year statute of limitations for claims under the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[5] See *Fichera* v. *Mine Hill Corp.*, supra, 207 Conn. 216–17. The court therefore concluded that the petitioner's failure to bring his petition within three years of his sentence operated as a jurisdictional bar to consideration of his petition for a new trial. The court thus dismissed the petition, and this appeal followed. Additional facts and procedural history will be set forth as necessary.

I

On appeal, the petitioner claims that the trial court incorrectly concluded that the three year limitation period of § 52-582 cannot be tolled by application of § 52-595. In response, the respondents contend that the trial court properly held that the limitation period of § 52-582 is jurisdictional in nature and therefore not subject to tolling under § 52-595.[6] Specifically, the respondents, relying on the analyses in *Turner* and *Fichera*, argue that there is "a clear legislative intent not to have § 52-595 apply to toll the statute of limitations for a petition for a new trial." We agree with the petitioner and, accordingly, conclude that the three year limitation period of § 52-582 may be tolled by a showing of fraudulent concealment pursuant to § 52-595.

We begin by noting that "[t]his court's standard of review for a motion for summary judgment is well established. Practice Book § [17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [I]ssue-finding, rather than issue-determination, is the key to the procedure. . . . [T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist. . . . Our review of the decision to grant a motion for summary judgment is plenary. . . . We therefore must

decide whether the court's conclusions were legally and logically correct and find support in the record." (Internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *50 Morgan Hospitality Group, LLC*, 211 Conn. App. 724, 730–31, 273 A.3d 726 (2022).

"Summary judgment may be granted where the claim is barred by the statute of limitations." *Doty* v. *Mucci*, 238 Conn. 800, 806, 679 A.2d 945 (1996). "Typically, in the context of a motion for summary judgment based on a statute of limitations special defense, a defendant . . . meets its initial burden of showing the absence of a genuine issue of material fact by demonstrating that the action had commenced outside of the statutory limitation period. . . . Then, if the plaintiff claims the benefit of a provision that operates to extend the limitation period, the burden . . . shifts to the plaintiff to establish a disputed issue of material fact in avoidance of the statute. . . . In these circumstances, it is incumbent upon the party opposing summary judgment to establish a factual predicate from which it can be determined, as a matter of law, that a genuine issue of material fact [as to the timeliness of the action] exists." (Citations omitted; internal quotation marks omitted.) *Doe* v. *West Hartford*, 328 Conn. 172, 192, 177 A.3d 1128 (2018).

It is also necessary to set forth certain legal principles concerning §§ 52-270 and 52-595. A petition for a new trial brought in accordance with § 52-270 is governed by the standard set forth by our Supreme Court in *Asherman* v. *State*, supra, 202 Conn. 434, pursuant to which "a court is justified in granting [such] a petition . . . when it is satisfied that the evidence offered in support thereof: (1) is newly discovered such that it could not have been discovered previously despite the exercise of due diligence; (2) would be material to the issues on a new trial; (3) is not cumulative; and (4) is likely to produce a different result in the event of a new trial." *Shabazz* v. *State*, 259 Conn. 811, 820–21, 792 A.2d 797 (2002). In addition to these specific elements, our Supreme Court has observed that "a court's decision on the petition should be guided by the more general principle that a new trial will be warranted on the basis of newly discovered evidence only where an injustice was done . . . ." (Internal quotation marks omitted.) Id., 821. Although a petition for a new trial "does not furnish a substitute for, or an alternative to, an ordinary appeal," it is available to remedy an injustice when, in light of "newly discovered evidence . . . that . . . could not have been discovered and produced at the former trial by the exercise of proper diligence," considerations of "equity and good conscience" demand that "relief against [the] judgment . . . be granted." *State* v. *Grimes*, 154 Conn. 314, 325, 228 A.2d 141 (1966); see also *Rizzo* v. *Pack*, 15 Conn. App. 312, 315–16, 544 A.2d 252 (1988). "The salutary purpose of [a petition for a new trial] is that if a party has a meritori-

ous defense and has been deprived of [a] reasonable opportunity to present it, he ought to be permitted to make it upon another trial." (Internal quotation marks omitted.) *State* v. *Grimes*, supra, 325. This "opportunity for a new trial when new evidence comes to light provides a [criminal] defendant [a] . . . critical procedural mechanism for remedying an injustice." *Seebeck* v. *State*, 246 Conn. 514, 531, 717 A.2d 1161 (1998); see also *Holliday* v. *State*, 111 Conn. App. 656, 662–63, 960 A.2d 1101 (2008) (same), cert. denied, 291 Conn. 902, 967 A.2d 112 (2009).

With respect to the limitation period applicable to a petition for a new trial, our Supreme Court has explained: "[T]he scope of review of a trial court's decision to grant a new trial on the basis of newly discovered evidence is limited to whether the trial court abused its discretion. . . . A critical limitation on the exercise of the trial court's discretion in passing upon such a petition for a new trial, however, is the statute of limitations [set forth in § 52-582]. . . .

"The three year statute of limitations on a petition for a new trial based on newly discovered evidence is the product of the legislature's balancing of the interests of the petitioner against the interests of the public and the state. The petitioner's interest is in attempting to establish that he is probably not guilty and that, therefore, the verdict in his criminal trial should be overturned. The state's interests are in preserving the finality of judgments, in not degrading the properly prominent place given to the original trial as the forum for deciding the question of guilt or innocence within the limits of human fallibility, and in the fact that in many cases an order for a new trial may in reality reward the accused with complete freedom from prosecution because of the debilitating effect of the passage of time on the state's evidence. . . .

"Indeed, one of the principal purposes of any statute of limitations is to enhance the reliability of fact-finding, based upon the common sense notions that the unreliability of fact-finding increases with the passage of time . . . and that it is wise public policy to minimize that degree of unreliability by barring the fact-finding process after the applicable limitations period. . . .

"Thus, for a petition for a new trial, within the three year limitations period, the petitioner's interests trump those of the public and the state. Beyond that period, however, the interests of the public and the state trump those of the petitioner." (Citations omitted.) *Summerville* v. *Warden*, 229 Conn. 397, 426–27, 641 A.2d 1356 (1994).[7]

With respect to fraudulent concealment under § 52-595, "[t]he question before us is whether the [petitioner] [has] adduced any credible evidence that [the respondents] fraudulently concealed the existence of the [peti-

tioner's] cause of action. To meet this burden, it was not sufficient for the [petitioner] to prove merely that it was more likely than not that the [respondents] had concealed the cause of action. Instead, the [petitioner] had to prove fraudulent concealment by the more exacting standard of clear, precise, and unequivocal evidence. . . . Under our case law, to prove fraudulent concealment, the [petitioner] [was] required to show: (1) [the respondents'] actual awareness, rather than imputed knowledge, of the facts necessary to establish the [petitioner's] cause of action; (2) the [respondents'] intentional concealment of these facts from the [petitioner]; and (3) the [respondents'] concealment of the facts for the purpose of obtaining delay on the [petitioner's] part in filing a complaint on [his] cause of action." (Internal quotation marks omitted.) *Medical Device Solutions, LLC* v. *Aferzon*, 207 Conn. App. 707, 745–46, 264 A.3d 130, cert. denied, 340 Conn. 911, 264 A.3d 94 (2021). "[Additionally], the [respondents'] actions must have been directed to the very point of obtaining the delay [in filing the action] of which [the respondents] afterward [seek] to take advantage by pleading the statute." (Internal quotation marks omitted.) Id., 746.

The rationale underlying § 52-595 is readily apparent, namely, to prevent a party from engaging in fraud to conceal a cause of action until the statute of limitations applicable to that action has expired. As the United States Supreme Court explained in the seminal case of *Bailey* v. *Glover*, 88 U.S. 342, 22 L. Ed. 636 (1874), the fraudulent concealment doctrine "is founded in a sound and philosophical view of the principles of statutes of limitation. They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence from which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud . . . until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure." Id., 349. In general terms, then, the fraudulent concealment doctrine, like other related doctrines, is based on the equitable principle that "no man may take advantage of his own wrong." *Glus* v. *Brooklyn Eastern District Terminal*, 359 U.S. 231, 232, 79 S. Ct. 760, 3 L. Ed. 2d 770 (1959); see also *General Stencils, Inc.* v. *Chiappa*, 18 N.Y.2d 125, 127, 219 N.E.2d 169, 272 N.Y.S.2d 337 (1966) ("[t]he principle that a wrongdoer should not be able to take refuge behind the shield of his own wrong is a truism").

Of course, ascertaining the interrelationship between §§ 52-582 and 52-595 gives rise to a question of the intent of the legislature. See, e.g., *Quarry Knoll II Corp.* v. *Planning & Zoning Commission*, 256 Conn. 674, 731–32, 780 A.2d 1 (2001) (interpretation of two interre-

lated statutory provisions requires determination of legislative intent). More specifically, we must determine whether the legislature intended that the limitation period of the former is subject to the tolling provision of the latter.

With these principles in mind, we turn to the trial court's decision in the present case. In concluding that proof of fraudulent concealment under § 52-595 does not apply to the three year limitation period of § 52-582, the trial court relied largely on *Turner* v. *State*, supra, 172 Conn. App. 352, in which this court held that § 52-582 erects a subject matter jurisdictional bar to consideration of a petition for a new trial that has not been filed within that three year period. Id., 370. We further explained in *Turner* that, for purposes of an untimely petition, the jurisdictional nature of § 52-582 deprives a trial court of the authority to entertain a claim of equitable tolling; id., 359–60; which we characterized therein "as a doctrine that includes notions of 'waiver, consent, or estoppel, that is, as an equitable principle to excuse untimeliness.' " Id., 360 n.8, quoting *Williams* v. *Commission on Human Rights & Opportunities*, 67 Conn. App. 316, 320 n.9, 786 A.2d 1283 (2001). As the court in *Turner* expressly recognized, however, it was *not* deciding whether proof of fraudulent concealment under § 52-595 would suffice to toll the limitation period of § 52-582, a question that we decided to "leave . . . for another day when the issue is squarely before us"; *Turner* v. *State*, supra, 358 n.6; because the petitioner in that case had not alleged fraudulent concealment. Id.

Although acknowledging that the court in *Turner* explicitly declined to address the issue of whether § 52-595 applies to § 52-582, the trial court concluded that the consideration that was deemed determinative in *Turner* with respect to equitable tolling, namely, the jurisdictional nature of § 52-582, is also the critical consideration with respect to the applicability of § 52-595 to § 52-582. In support of its reasoning in this regard, the trial court noted that, in *Turner*, this court "provide[d] guidance" by citing to *Fichera* v. *Mine Hill Corp.*, supra, 207 Conn. 216, which held that reaching the merits of a fraudulent concealment claim brought outside the statute of limitations, in the context of a CUTPA claim, "would defeat the legislative intention expressed in § 42-110g (f) to bar actions for CUTPA violations after the lapse of more than three years from their occurrence." The trial court viewed that statute, which the court in *Fichera* held could not be tolled by § 52-595, as jurisdictional and "textually comparable" to § 52-582, and ultimately determined that this court's conclusion in *Turner*—that the three year limitation period of § 52-582 is jurisdictional in nature and, therefore, principles of *equitable* tolling do not operate to toll that provision—is equally applicable to the *statutory* tolling available for fraudulent concealment under § 52-595.

We are not persuaded that *Turner* controls the outcome of this case. Although it is true that, in *Turner*, this court held that § 52-582 is subject matter jurisdictional, the court found that factor determinative only with respect to the applicability of equitable tolling, that is, tolling predicated on the equitable common-law authority of the court itself. See *Turner* v. *State*, supra, 172 Conn. App. 360–61. In such cases, involving a legislatively created jurisdictional time limitation, the court does not have the power to permit the tolling of the limitation provision under its equitable or discretionary authority. See id., 360 ("[o]ur Supreme Court [in *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 269, 777 A.2d 645 (2001)] has made clear that a court lacks the authority to apply the doctrine of equitable tolling or otherwise exercise discretionary authority to extend a limitations period if the applicable statute of limitations constitutes a limit on the court's subject matter jurisdiction"). That constraint on the court's authority, however, is not at issue when, as here, the question presented is not whether the court itself has the power to authorize the tolling or extension of a statute of limitations, but, rather, whether a broadly applicable tolling provision promulgated by the legislature operates to toll the limitation period. In other words, the fact that the three year limitation period of § 52-582 is jurisdictional in nature reflects an intent by the legislature that *a court* shall not have the power to allow for the tolling of that period in the exercise of its equitable authority. Although that three year period no doubt operates as an important limitation on the availability of a petition for a new trial, we must decide, as a matter of statutory interpretation, whether the legislature intended that the limitation period may be tolled by proof of fraudulent concealment under § 52-595, an issue not addressed in *Turner*.

We also conclude that the trial court's reliance on *Fichera* was misplaced. *Fichera* involved a claim of, inter alia, fraudulent concealment under § 52-595 in the context of an alleged CUTPA violation. *Fichera* v. *Mine Hill Corp.*, supra, 207 Conn. 213. In rejecting the plaintiff's claim that § 52-595 tolled § 42-110g (f),[8] the three year statute of limitations applicable to CUTPA claims, the court concluded only that the tolling claim was unavailable under the particular facts of that case because the deceptive or fraudulent practice alleged in support of that tolling claim was the very same conduct that comprised the alleged CUTPA violation. Id., 216–17. The court explained that, under such facts, "[w]e are convinced that . . . application [of § 52-595] here would defeat the legislative intention expressed in § 42-110g (f) to bar actions for CUTPA violations after the lapse of more than three years from their occurrence. Since CUTPA violations are defined in General Statutes § 42-110b to include 'deceptive acts or practices in the conduct of any trade or commerce,' it is evident that

the legislature intended that the perpetrators of such fraudulent practices, as well as other CUTPA violators, should be permitted to avail themselves of the statute of limitations defense provided by § 42-110g (f). . . . We conclude, therefore, that those who violate CUTPA by committing 'deceptive acts,' as the trial court found the defendants to have done, were intended by the legislature to have the same protection that § 42-110g (f) affords to other CUTPA violators, such as those who engage in 'unfair methods of competition' and 'unfair . . . practices in the conduct of any trade or business.' General Statutes § 42-110b (a)." *Fichera* v. *Mine Hill Corp.*, supra, 216–17. No such potential conflict exists between §§ 52-582 and 52-595. Moreover, although the trial court was guided by *Fichera* because, like § 52-582, § 42-110g (f) is jurisdictional, the court in *Fichera* never even referred to § 42-110g (f) as jurisdictional in nature, let alone did its analysis depend on any such characterization.[9] Thus, *Fichera* has no bearing on whether proof of fraudulent concealment under § 52-595 tolls the limitation period of § 52-582.[10]

Nevertheless, the respondents argue that, if the legislature had intended for § 52-582 to be tolled by fraudulent concealment, it could have said so in § 52-582. The respondents borrow this argument from *Turner*, in which the court reasoned that the legislature could have included express exceptions for equitable tolling in § 52-582 if it intended for such exceptions to apply to that three year limitation provision. See *Turner* v. *State*, supra, 172 Conn. App. 364–65. The flaw in the respondents' argument is that the legislature *already* has enacted a tolling provision for fraudulent concealment, § 52-595, which contains no limiting language and, therefore, by its plain terms is applicable generally to all statutes of limitations. Consequently, there would be no reason for the legislature to amend § 52-582 to include an exception for fraudulent concealment because there already is such a provision in the General Statutes. Thus, no inference that § 52-595 is inapplicable to § 52-582 may by drawn merely because the legislature has not amended § 52-582 to add a tolling provision for fraudulent concealment.

Contrary to the respondents' contention, the intent of the legislature that § 52-595 applies to § 52-582 is apparent from the straightforward language and evident purpose of those statutory sections.[11] As stated previously, there is no language in § 52-595 to indicate that its application is restricted only to certain statutes of limitations and not to others. Rather, § 52-595 provides, in broadly applicable terms, for the tolling of the limitation period applicable to a cause of action "[i]f *any* person" who is liable to such an action by another "fraudulently conceals from him the existence of" that cause of action. (Emphasis added.) Moreover, there is nothing in the wording of § 52-582 to indicate that the legislature intended to exempt that limitation period

from the operation of § 52-595 and thereby reward a respondent for his own misconduct in fraudulently concealing evidence that would warrant a new trial. It is axiomatic that "[w]e will not read into a [statute] words or limitations that are not there"; *Putnam Park Apartments, Inc.* v. *Planning & Zoning Commission*, 193 Conn. App. 42, 51, 218 A.3d 1127 (2019); see also *Tower* v. *Miller Johnson, Inc.*, 67 Conn. App. 71, 78, 787 A.2d 26 (2001) ("[w]e will not read into clearly expressed legislative provisions which do not find expression in its words" (internal quotation marks omitted)); because "[w]e are bound to interpret legislative intent by referring to what the legislative text contains, not what it might have contained." (Internal quotation marks omitted.) *Gamez-Reyes* v. *Biagi*, 136 Conn. App. 258, 274, 44 A.3d 197, cert. denied, 306 Conn. 905, 52 A.3d 731 (2012). There is no justification for deviating from this well established principle in the present case.

Indeed, our Supreme Court made this very point with respect to § 52-595 in *Connell* v. *Colwell*, 214 Conn. 242, 571 A.2d 116 (1990), wherein the court addressed a claim brought by the plaintiff, the administratrix of the estate of her late husband, alleging that the defendant physician had committed malpractice in failing to diagnose her husband's cancer. Id., 243–44. The trial court granted the defendant's motion for summary judgment, concluding that the action was time barred by the relevant statute of limitations, General Statutes § 52-584,[12] notwithstanding the plaintiff's contention that the applicable limitation period was tolled under § 52-595 by virtue of the defendant's fraudulent concealment of the cause of action. Id., 243. On appeal, our Supreme Court concluded that the trial court properly granted the motion on the basis of its determination, inter alia, that the evidence did not support the plaintiff's claim of fraudulent concealment. Id., 250. In doing so, however, the court rejected the defendant's contention, raised at oral argument, "that the fraudulent concealment exception to the statute of limitations, contained in . . . § 52-595, will not save actions brought beyond the three year repose period contained in . . . § 52-584." Id., 245–46 n.4. The court explained its conclusion as follows: "The defendant was unable, however, to articulate how the language of § 52-595 was to be construed to provide the selective application he suggests. We find no merit to the defendant's argument. Section 52-595 provides that causes of action fraudulently concealed by a defendant will '*accrue* against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence.' . . . 'It is clear that, when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent.' *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 193, 530 A.2d 171 (1987). Since fraudulent concealment will cause an action to accrue

upon the date of discovery rather than on 'the date of the act or omission complained of,' as specified in § 52-584, we conclude that *the exception contained in § 52-595 constitutes a clear and unambiguous general exception to any statute of limitations that does not specifically preclude its application.*" (Emphasis altered.) *Connell* v. *Colwell*, supra, 214 Conn. 246 n.4.

The court in *Connell* could not have been clearer: given the plain and encompassing language of § 52-595, it must be deemed to apply to *any* limitation period that does not expressly disclaim its applicability. Because § 52-582 contains no such disclaimer, its three year limitation period may be tolled upon a showing of fraudulent concealment in accordance with § 52-595.

This conclusion makes a great deal of sense when considered in light of the important purpose of a petition for a new trial and the rationale underlying the fraudulent concealment doctrine codified in § 52-595. As discussed previously, a petition for a new trial is available, within certain time limits, only when newly discovered evidence casts serious doubt on the legitimacy of a previous judgment. See, e.g., *Skakel* v. *State*, 295 Conn. 447, 468, 501 n.41, 991 A.2d 414 (2010). Indeed, in a criminal case, a petition for a new trial may be granted only when the petitioner has established that a second trial is necessary "to avoid an injustice," a standard that is not met unless evidence that is newly discovered—and which, despite the exercise of due diligence, could not have been discovered in time for its use in the original trial—"would be likely to result in the acquittal of the petitioner . . . ." Id., 468. Moreover, under § 52-582, a petitioner who can meet this demanding standard has only three years within which to file a petition, a time frame that reflects a legislative judgment that, during that three year period, the convicted petitioner's interest in showing that he is probably not guilty on the basis of evidence that was unavailable at the time of trial trumps the state's interest in preserving the finality of the judgment and avoiding the adverse effect of the passage of time on the state's evidence. See *Summerville* v. *Warden*, supra, 229 Conn. 426–27. This balancing of interests lies at the heart of the legislative scheme providing for the filing of a petition for a new trial within three years of the original judgment.

When, however, a party engages in fraud to conceal evidence that would support a petition for a new trial—that is, evidence that likely would result in a different outcome following a second trial—the offending party has effectively skewed that legislative balance in his favor by curtailing or even eliminating the opportunity afforded a petitioner under § 52-582 to vindicate his right to seek a new trial for a period of three years following the original judgment. In such a case, it seems self-evident that it is manifestly unfair and unjust to

permit that party to benefit from his own fraudulent conduct. It is that unfairness that § 52-595 was designed to thwart by affording the petitioner the right to file a petition for a new trial three years from the date of the discovery of the evidence, thereby negating the adverse effect of the fraudulent concealment. If a petitioner can establish the stringent elements of § 52-595—that is, he can prove by clear and convincing evidence that the party against whom the petition is brought, acting with actual knowledge of the facts necessary to establish the petitioner's cause of action, intentionally concealed those facts for the very purpose of subverting the petitioner's ability to file a timely petition—we can think of no policy consideration that would prompt the legislature to deny the petitioner the benefit of that tolling provision. In fact, to conclude otherwise would be to impute to the legislature an intent to countenance—indeed, to encourage—such fraudulent concealment, a bizarre and wholly inequitable result that should not be attributed to that body; see, e.g., *State* v. *Rivera*, 250 Conn. 188, 200, 736 A.2d 790 (1999) ("[w]e decline to read statutes so as to reach bizarre or absurd results"); especially when, as here, the language and evident purpose of the relevant statutory provisions point decidedly in the opposite direction.

For the foregoing reasons, we conclude that the fraudulent concealment tolling provision of § 52-595 applies to the three year limitation period of § 52-582. Consequently, we must address the respondents' alternative ground for affirmance regarding the sufficiency of the petitioner's evidence to support a claim under § 52-595.

II

As an alternative ground to affirm the summary judgment rendered by the trial court in their favor, the respondents maintain that the petitioner has failed to demonstrate that, viewing the evidence in the light most favorable to the petitioner, there is a genuine issue of material fact in dispute that would entitle him to a trial on his claim under § 52-595. We agree with the respondents.

Some additional facts and procedural history are necessary to our resolution of this issue. With respect to the merits of the petitioner's claim under § 52-595, the memorandum of decision of the trial court granting the respondents' motion for summary judgment sets forth the following facts relevant to the evidence that the petitioner claims is newly discovered and was fraudulently concealed by the respondents. "The petitioner . . . an unrepresented litigant, filed a petition for a new trial . . . in two counts alleging, first, that [he] received a written statement from an 'Iris [S.],' which 'verifies' that he is 'actually innocent' of the crimes with which he was charged, and to which he was 'forced' to plead guilty" and that "had the 'Iris [S.]' letter(s) been dis-

closed, the petitioner would not have entered pleas of guilty to the charges and would have opted for a trial, and second, that the respondents 'knew or should have known the facts of the case.' "

In his opposition to the respondents' motion for summary judgment, the petitioner, citing § 52-595, claimed that "the statute of limitations [relative to his petition for a new trial, § 52-582] was tolled due to fraudulent concealment of the 'Iris [S.] letters' by the respondents. Specifically, the petitioner claim[ed] that the 'letters' annexed to the opposition to a former motion to dismiss were unknown to him until November 15, 2015, which was roughly eleven months before the running of the [§] 52-582 time limitation." (Footnote omitted.)

In a footnote, the court added: "By way of background, certain undisputed facts serve to place the purported 'Iris [S.] letters' in perspective. . . . All five of the handwritten statements ('letters') attached to the petitioner's original opposition [to the respondents' motion to dismiss] are unsigned; four are undated. The first (in the order presented) bears an upper right hand corner notation: '6:30 P.M. 1/18/13.' It reads: 'To Prosecutor Donna Mambrino' and begins by reciting 'My name is Iris.' While the one page document contains certain details, and considerable hearsay, the portion claimed by the petitioner as particularly probative is the recitation that, on August 24, 2012, while she ('Iris') was in a car at a Brainard Road gas station, waiting to meet one Kelly Cooper, a vehicle pulled up in front of her 'real fast' and [Cooper's] friend 'Ty' exited the driver seat of that vehicle and entered her car. Somebody from a moving truck that was leaving the gas station, who she later learned was the petitioner, got into the vehicle 'Ty' had exited, and drove it until it 'crashed off the highway.'

"The four other unsigned statements or 'letters' are, as stated, undated, and do not contain the name 'Iris' or 'Iris [S.]'; they can be summarized . . . as follows: [1] follow-up letter to . . . Mambrino referring to the document dated January 18, 2013, and inquiring about what happened to . . . Cooper and his friend 'Ty'; it also states that the prosecutor has not called her back, expresses concern for her safety, and indicates [that] she is still living in Massachusetts; [2] 'letter' to Attorney . . . Lorenzen advising that the statement dated January 18, 2013, had been sent to . . . Mambrino and enclosing a copy thereof; [3] similar letter with enclosure (statement dated January 18, 2013) to Judge [Joan K.] Alexander; and [4] similar letter with enclosure (statement dated January 18, 2013) to the petitioner.

"The petitioner characterizes the Iris [S.] documents as 'exoneration' evidence; in [the court's] view, the Iris [S.] documents are of a decidedly inculpatory character: the purported author does not claim to have been an eyewitness to the armed robbery, her January 18, 2013

'letter' places the petitioner in proximity to the scene immediately following the robbery, and serves to confirm his participation in the alleged getaway."

Although describing the "Iris S." letters in its memorandum of decision in order to provide context for the petitioner's claim, the trial court did not reach the merits of the respondents' claim that those letters are insufficient to defeat their motion for summary judgment. The trial court concluded, rather, that the three year limitation period of § 52-582 had expired before the petitioner commenced his petition for a new trial because, as a matter of law, that limitation period could not be tolled by proof of fraudulent concealment under § 52-595. On appeal, however, the petitioner relies on those letters to support his contention, made in response to the respondents' alternative ground for affirmance, that he is entitled to a trial on his fraudulent concealment claim. In his brief to this court, however, the petitioner fails to explain why those letters are sufficient to give rise to a genuine issue of material fact such that summary judgment is inappropriate. Instead, his sole argument—the sum total of which comprises less than one full page of his brief—is that the respondents are estopped from contesting the sufficiency of the letters because, in their motions to dismiss the petition for a new trial, the respondents did not "seek to introduce evidence outside of the record to controvert or contradict the facts [alleged in the] petitioner's complaint." This result is required, according to the petitioner, because "[a] motion to dismiss is a responsive pleading that admits all facts well pleaded especially when it does not seek to introduce evidence outside of the record to deny or rebut the facts of the allegations," and the respondents therefore must be deemed to have "admitted to all the facts of the allegations in the petitioner's amended petition for a new trial. Because of this, the trial court was not permitted to make a finding to the contrary."[13]

This argument is plainly lacking in merit because "[a] motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *Pickard* v. *Dept. of Mental Health & Addiction Services*, 210 Conn. App. 788, 792–93, 271 A.3d 178 (2022). This is in marked contrast to a motion for summary judgment, which requires the production of evidence so that the court can determine whether there

is a genuine issue of material fact in dispute. See, e.g., *Day* v. *Seblatnigg*, 341 Conn. 815, 825, 268 A.3d 595 (2022). Consequently, the failure of the respondents to dispute the allegations of the petition for a new trial in connection with their motions to dismiss does not constitute an admission of those facts for purposes of their motion for summary judgment, and there is nothing whatsoever in our law to support the petitioner's assertion otherwise.

Moreover, in the respondents' brief to this court, filed following the petitioner's submission of his brief, the respondents explained, with citation to case law, why they are not deemed to have admitted the petition's allegations merely because they elected not to challenge those allegations for purposes of their motions to dismiss, which did not depend on the veracity of the allegations of the petition. Nevertheless, the respondents also set forth the arguments as to why, in their view, the "Iris S." letters were insufficient from an evidentiary perspective to defeat their motion for summary judgment. Although he could have done so, the petitioner failed to file a reply brief addressing the respondents' arguments.

We recognize that the petitioner is a self-represented party and that, "[a]lthough self-represented parties are not excused from complying with relevant rules of procedural and substantive law, [i]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party." (Internal quotation marks omitted.) *Gutierrez* v. *Mosor*, 206 Conn. App. 818, 835, 261 A.3d 850, cert. denied, 340 Conn. 913, 265 A.3d 926 (2021). Thus, "like the trial court, [this court] will endeavor to see that such a litigant shall have the opportunity to have his case fully and fairly heard so far as such latitude is consistent with the just rights of any adverse party." (Internal quotation marks omitted.) Id. Nonetheless, "[a]lthough we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law"; (internal quotation marks omitted) *C. B.* v. *S. B.*, 211 Conn. App. 628, 630, 273 A.3d 271 (2022); and "[w]e repeatedly have stated that [w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [When] a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned. . . . For a reviewing court to judiciously and efficiently . . . consider claims of error raised on appeal . . . the parties

must clearly and fully set forth their arguments in their briefs." (Internal quotation marks omitted.) Id.

In the present case, the petitioner's brief with respect to the sufficiency of his showing of fraudulent concealment is inadequate because he relies entirely on what fairly may be characterized as a patently meritless, if not frivolous, legal argument, the substance of which is set forth in two sentences. Although the petitioner had a second opportunity to address that sufficiency issue in a reply brief, he did not do so. Even if the petitioner is afforded considerable leeway by virtue of his self-represented status, it cannot reasonably be said that he has adequately briefed this issue.

Moreover, it is apparent that the evidence proffered by the petitioner in support of his opposition to the respondents' motion for summary judgment, namely, the "Iris S." letters, is inadequate for that purpose. First, as the respondents point out, the letters have never been authenticated. "This court has made clear that [the] rules [of practice] would be meaningless if they could be circumvented by filing [unauthenticated documents] in support of or in opposition to summary judgment. . . . Therefore, before a document may be considered by the court [in connection with] a motion for summary judgment, there must be a preliminary showing of [the document's] genuineness, i.e., that the proffered item of evidence is what its proponent claims it to be. . . . Documents in support of or in opposition to a motion for summary judgment may be authenticated in a variety of ways, including, but not limited to . . . the addition of an affidavit by a person with personal knowledge that the offered evidence is a true and accurate representation of what its proponent claims it to be." (Citation omitted; internal quotation marks omitted.) *Anderson* v. *Dike*, 187 Conn. App. 405, 411–12, 202 A.3d 448, cert. denied, 331 Conn. 910, 203 A.3d 1245 (2019). In the absence of some kind of authentication, the letters cannot reasonably be relied on as probative evidence.[14]

Furthermore, the petitioner has never identified "Iris S." with any particularity, and there is nothing in the record to corroborate the content of the letters she purportedly wrote. Indeed, there is no proof that the respondents received the letters, and the petitioner has made no showing that, if they did receive the letters, they concealed them from the petitioner for the purpose of preventing him from seeking a new trial. For all these reasons, the petitioner has failed to present evidence sufficient to establish a genuine issue of material fact with respect to his claim that the three year limitation period of § 52-582 was tolled by the respondents' fraudulent concealment of the letters.[15] Accordingly, the respondents are entitled to summary judgment.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 52-595 provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence."

[2] General Statutes § 52-582 (a) provides in relevant part: "No petition for a new trial in any civil or criminal proceeding shall be brought but within three years next after the rendition of the judgment or decree complained of . . . ."

[3] General Statutes § 52-270 (a) provides in relevant part: "The Superior Court may grant a new trial of any action that may come before it, for . . . the discovery of new evidence . . . ."

[4] "The three year period [of § 52-582] begins to run from the date of rendition of judgment by the trial court; *Varley* v. *Varley*, 181 Conn. 58, 61, 434 A.2d 312 (1980); which, in a criminal case, is the date of imposition of the sentence by the trial court. *State* v. *Coleman*, 202 Conn. 86, 89, 519 A.2d 1201 (1987)." *Holliday* v. *State*, 111 Conn. App. 656, 663, 960 A.2d 1101 (2008), cert. denied, 291 Conn. 902, 967 A.2d 112 (2009).

[5] We discuss both *Fichera* and *Turner* at greater length in part I of this opinion.

[6] The respondents also contend, as an alternative ground for affirming the judgment of the trial court, that, even if § 52-595 applies to § 52-582, the petitioner has failed to present facts sufficient to establish a genuine issue of material fact with respect to his claim of fraudulent concealment under § 52-595. We discuss that alternative ground in part II of this opinion.

[7] Although the court in *Summerville* spoke in terms of the filing of a petition for a new trial in the context of a challenge to a judgment of conviction following a trial, there is no dispute that such a petition may be brought, as it was here, in the context of a claim challenging a judgment of conviction rendered after a guilty plea. Moreover, although *Summerville* was decided in the context of a petition for a new trial in a criminal case, such a petition may also be brought in a civil case. See, e.g., *Rizzo* v. *Pack*, supra, 15 Conn. App. 315 ("[t]he procedure for procuring a new trial by petition, whether in a civil or criminal case, is authorized by § 52-270").

[8] This court has concluded that § 42-110g (f) is jurisdictional in nature. *Avon Meadow Condominium Assn., Inc.* v. *Bank of Boston Connecticut*, 50 Conn. App. 688, 700, 719 A.2d 66, cert. denied, 247 Conn. 946, 723 A.2d 320 (1998), and cert. denied, 247 Conn. 946, 723 A.2d 320 (1998).

[9] Indeed, in 1988, when *Fichera* was decided, no appellate court of this state had held that § 42-110g (f) is jurisdictional in nature. As we have indicated, subsequently, in 1998, this court determined that it is. See footnote 8 of this opinion.

[10] In this connection, it bears noting that our Supreme Court has expressly reserved the question of whether CUTPA's three year limitation period of § 42-110g (f) may be *equitably* tolled. See *Normandy* v. *American Medical Systems, Inc.*, 340 Conn. 93, 112 n.18, 262 A.3d 698 (2021) ("[h]ere, we again do not need to reach the issue of whether the CUTPA limitation period may be tolled by the continuing course of conduct doctrine because we conclude that there is no factual predicate for the application of that doctrine"). If our Supreme Court were of the view that, under *Fichera*, statutory tolling for fraudulent concealment is unavailable for CUTPA claims generally, it seems apparent that the court in *Normandy* would have had no difficulty in concluding that equitable tolling is also jurisdictionally barred under CUTPA. No doubt the court has not done so because *Fichera* did not hold that § 52-595 is inapplicable for purposes of CUTPA, only that that tolling provision did not apply under the specific facts of that case.

[11] We note that there is no reported legislative history for the fraudulent concealment statute, which first was enacted in 1874. See General Statutes (1875 Rev.) tit. 19, c. 18, § 20.

[12] General Statutes § 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused . . . by malpractice of a physician . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of . . . ."

[13] The foregoing represents the entirety of the petitioner's argument as to why the letters are sufficient to require a trial on his fraudulent concealment claim.

[14] The petitioner was granted permission by the trial court to subpoena "Iris S." Although the petitioner asserted that he received the letters from "Iris S." and not the respondents, it appears that he did not know her last name or address, thereby rendering him unable to secure her presence or testimony.

[15] As the respondents acknowledge, because the petitioner's fraudulent concealment claim regarding newly discovered evidence also gives rise to a *Brady* claim, the petitioner's right to a new trial may be vindicated by virtue of a petition for a new trial; see *State* v. *McCoy*, 331 Conn. 561, 598, 206 A.3d 725 (2019) ("newly discovered *Brady* claims may . . . be brought by way of a petition for a new trial up to three years after sentencing"); and via a petition for a writ of habeas corpus. In fact, while the present case was pending in the trial court, the petitioner filed a habeas petition based on the same alleged *Brady* violation that he has raised here. He subsequently withdrew that claim, however, without explanation. We express no view with respect to any aspect of any such habeas claim that the petitioner might seek to commence in the future.

Finally, it bears noting that, in cases that do not involve an alleged constitutional violation, a petition for a new trial will almost invariably be the only relief available to an individual seeking a new trial on the basis of newly discovered evidence. This is true, of course, with respect to both criminal and civil cases.